**MELVIN WALTERS, SR. and BANK OF NOVA SCOTIA,**
**Appellants/Defendants**
**v.**
**LORETTA A. PARROTT, Appellee/Plaintiff**

S.Ct. Civ. No. 2009-0049

Supreme Court of the Virgin Islands

April 30, 2013

Melvin Walters, Sr., St. Thomas, USVI, *Pro se.*

Loretta A. Parrott, St. Thomas, USVI, *Pro se.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(April 30, 2013)

SWAN, Associate Justice. Appellant[1] Melvin Walters, importunes this Court to overturn the trial court's Findings of Fact and reverse the trial court's Judgment awarding Appellee, Loretta Parrott, an equitable interest in property held by Appellant in fee simple absolute, and to simultaneously reverse the Judgment on the partition of a property held by the parties as tenants-in-common. Appellant further requests relief from this Court on other grounds related to the interests in these properties. For the reasons elucidated below, we affirm the Judgment and orders of the Superior Court.

---

[1] Although listed as an Appellant, Bank of Nova Scotia took no part in this appeal.

## I. FACTS AND PROCEDURAL HISTORY

This case involves two parties who are unwilling to agree on even the most innocuous facts. The rudimentary facts are as follows: The parties, Melvin Walters, Sr. ("Walters") and Loretta A. Parrott ("Parrott"), never married but maintained a long, romantic relationship, which began in the late 1970's. In 1982, the parties began cohabiting. Two children were born to them during their relationship. The parties also contributed to the care and maintenance of three children Walters had fathered prior to his romantic relationship with Parrott.

The issues in this case, however, concern two parcels of real property on St. Thomas. The first parcel, number 2W-62 Estate Nazareth ("Estate Nazareth property"), was purchased by Walters in 1979. The trial court's Findings of Fact state that the Estate Nazareth property was undeveloped at the time of purchase. Walters later constructed a dwelling on the property. However, Walters claims that he purchased this property with a two-story house already constructed on the property.[2] (Appellant's Br. at 17.) The second parcel, an undeveloped lot at number 29B Estate Frydenhoj ("Estate Frydenhoj property"), was purchased jointly by the parties in fee simple absolute in 1992.[3]

Beginning about 1982, when the parties started cohabiting, they resided at the Estate Nazareth property and continued this cohabitation for several years. However, by January 2002, the parties' relationship had deteriorated; therefore, they ceased cohabiting. Subsequently, Walters relocated outside the territory, but Parrott continued to reside at the Estate Nazareth property with their two children.

---

[2] Walters claims that the fact that he purchased the Nazareth Property with a two-story house is public record; however, he failed to submit any document to verify this claim in order to allow the taking of judicial notice of this fact in accordance with the applicable evidentiary rules. At the time of the trial proceedings, the 1953 version of the Uniform Rules of Evidence (URE), codified as 5 V.I.C. §§ 771-956 applied to evidentiary issues in the local Virgin Islands courts pursuant to this Court's decision in *Phillips v. People*, 51 V.I. 258 (V.I. 2009). *See Blyden v. People*, 53 V.I. 637, 658 (V.I. 2010) (internal citations omitted). However, on March 26, 2010, the Legislature of the Virgin Islands passed Act No. 7161, section 15 which repealed the URE and replaced it with the Federal Rules of Evidence. The Act was signed into law on April 7, 2010. *Ramirez v. People*, 56 V.I. 409, 414 n.4 (VI. 2012)

[3] We glean from dialogue between the trial court and Parrott's attorney concerning partition of a homestead property and an undeveloped property, that the Estate Frydenhoj property was still undeveloped at the time of the action for partition. (*See* Status Hr'g Tr. 12 :1-25 June 20, 2006.)

On November 25, 2003, Parrott filed suit in the Superior Court of the Virgin Islands seeking, among other things, the partition and/or sale of both the Estate Nazareth and Estate Frydenhoj properties. (Appellee's App..at 2-3; Compl. at 2-3.) In response, on or about November 8, 2004, Walters moved for dismissal of Parrott's Complaint. He further counterclaimed for a share of the rent from tenants residing on the Estate Nazareth property which Parrott had collected over the years.[4] His counterclaim also included a claim for rent Parrott allegedly owed Walters because of her continued occupancy at the Estate Nazareth property after January 2002, and a claim for an accounting of costs and fees generated by the property. (Appellee's App. at 6-7; Answer, Defenses and Counterclaim at 3.) Thereafter, the parties filed a plethora of motions, most of which were not included in the record submitted on appeal. These motions concerned issues central to this appeal; namely, Walters's inability to gain access to the Estate Nazareth property, rent collected from the Estate Nazareth property, expenses incurred through maintenance of the property, access to documents concerning the property, and the conduct of the parties. Consequently, in a September 12, 2005 Order, the trial court, in pertinent part:

> **ORDERED**, that Defendant's *Motion for Leave to Compel Request for Inspection and Permission to Enter Property (2 W-62 Estate Nazareth)* is **GRANTED IN PART** and **DENIED IN PART**, subject to the above stated restrictions; and it is further
>
> . . . .
>
> **ORDERED**, that Defendant's *Motion to Collect Rent and Expenses* is hereby **DENIED**; and it is further
>
> . . . .
>
> **ORDERED**, that Defendant's *Motion for Emergency Restraining Order and/or Potential Domestic Violence Civil Protection Order Against Plaintiff* is hereby **DENIED** for lack of jurisdiction; and it is further
>
> **ORDERED**, that Defendant's *Motion to Compel Request for Production of Documents* is hereby **DENIED**, however, Defendant is free

---

[4] This contention implies that the Estate Nazareth property where Parrott resided had rental units as is common in the Virgin Islands.

to resubmit a request for production of documents within the appropriate format outlined in FED. R. CIV. P. 34(b); and it is further

ORDERED, that a decision on Defendant's Motion to Recover Appraisal Cost[s] is held in abeyance until an invoice is submitted *no later than Monday, October 3, 2005*[.]

(Appellant's App. at 66-67) (emphasis in original). The "above-stated restrictions" in the first paragraph of the September 12, 2005 Order were based on the trial court's finding that "[b]oth property appraisals of the Nazareth dwelling indicated the need for slight maintenance[;]" therefore, the trial court granted Walters, but denied his family members, the right to enter and inspect the Estate Nazareth property upon seventy-two hours' notice to Parrott. (*Id.* at 66.) The trial court also ordered that the parties equally share the costs of any repairs to the Estate Nazareth property. The trial court further ordered that Walters's Motion to Collect Rent and Expenses was denied because rent and expenses were underlying issues in this case; therefore, the Motion was premature. (*Id.* at 66.) The trial court also found that Walters's Motion to Compel Request for Production of Documents failed to state with specificity the documents Walters desired to obtain; therefore, it constituted a mere "blanket fishing expedition." (*Id.*)

Walters filed at least four additional motions with the trial court, namely "(1) [M]otion to [D]isqualify the [U]ndersigned Judge; (2) [E]mergency [M]otion for [R]econsideration [of the trial court's June 20, 2006 Order]; (3) [M]otion to [C]ontinue (reschedule) [H]earing; and (4) [E]mergency [M]otions to [E]nter (2nd [f]loor apartment) (2w-62 Estate Nazareth) to [R]emove [P]ersonal [P]roperty and [P]reserve [L]egal [D]ocuments, [R]ecords and [O]ther [E]vidence." (*Id.* at 42.) In its August 3, 2006 Order, the trial court denied Walters's Motion to Reconsider the June 20, 2006 Order and denied Walters's Motion to Continue or Reschedule the hearing. Additionally, the trial court ordered that Walters's Emergency Motion to Remove Personal Property and Documents would be heard at the impending August 17, 2006 trial. (*Id.* at 43.)

Trial was held on August 17, 2006. (*Id.* at 36.) On October 3, 2007, the trial court's Findings of Fact and Judgment, *nunc pro tunc* to August 17, 2006, were entered. (*Id.* at 34-40.) In its Judgment, the trial court disposed of the equitable interests in the two properties as follows: Walters was awarded an exclusive interest of $45,000.00 and one-half of the remaining equitable interest in the Estate Nazareth property. Parrott was

awarded one-half of the remaining equitable interest in the Estate Nazareth property, after deduction of Walters's exclusive $45,000.00 interest. Walters was also awarded a right of first refusal to purchase Parrott's interest in the Estate Nazareth property. Parrott's interest in the Estate Nazareth property was ordered to be subject to the closing costs for the sale of her interest. The trial court further ordered that in the event the Estate Nazareth property "remains unsold or otherwise the controversy remains unresolved," Walters was ordered to commence paying Parrott one-half of the rental income produced by the apartment units on the property. (Appellee's App. at 15.) Additionally, both Walters and Parrott were awarded a one-half interest in the purchase price, or fair market value, of the Estate Frydenhoj property. Walters was granted thirty days from the date of the trial court's Order to purchase Parrott's interest in the Frydenhoj property. If Walters failed to purchase Parrott's interest within thirty days, the property would be listed on the market for sale.

On October 26, 2007, Walters filed an Amended Motion for Reconsideration[5] of the trial court's October 3, 2007 Judgment. In that Motion, Walters asserted many of the same contentions that he now advances on appeal. One such contention is that in its October 3, 2007 Order, the trial court neglected to consider certain expenses Walters incurred and other financial considerations. (Appellant's App. at 14-16.) Also, Walters alleged that Parrott provided false testimony at trial (*Id.* at 17) and that Walters possesses newly discovered evidence in the form of certain receipts for real property appraisals, interest that was paid, and other expenses that were incurred between 1979 and 1992. (*Id.* at 19-20.) Lastly, Walters faults the trial court for directing Parrott's counsel to draft and submit to the trial court for review its findings of fact and conclusions of law issued orally on August 17, 2006. Walters objects to his not being afforded an opportunity to approve the findings of fact and conclusions of law prior to their submission to the trial court. (*Id.* at 21-23.) Parrott opposed Walters's Motion for Reconsideration. (*Id.* at 8-9, 31-32.) Ultimately, the trial court held a post-judgment hearing on March 12, 2009. On March 17, 2009, the trial court summarily denied Walters's request for post-trial relief. (*Id.* at 3.) On April 15, 2009, Walters appealed the trial court's denial of his Motion for Reconsideration. (*Id.* at 1.)

---

[5] Appellant's original Motion for Reconsideration was filed on October 16, 2007.

## II. ISSUES

From the record on appeal and from Walters's *pro se* filings and contentions on appeal, we conclude that the following issues are presented for resolution:

A. Whether the trial court properly exercised jurisdiction over the real properties that are the subject of this case.

B. Whether the trial court erred in denying Walters's Motion for Contempt and for Sanction against Parrott.

C. Whether the trial court erred in denying Walters's March 2, 2009 Motion for Recusal.

D. Whether the trial court erred in denying Walters's October 26, 2007 Amended Motion for Reconsideration or Motion for a New Trial.

## III. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction over all final judgments, final decrees and final orders of the Superior Court. 4 V.I.C. § 32(a). Because the Superior Court's post-judgment March 17, 2009 Order disposed of all the claims that were then before the Superior Court, the March 17, 2009 Order was a final order; therefore, we have jurisdiction over this case.

■ Parrott argues that because "more than ten (10) days had elapsed from the entry of final judgment" to the time Walters filed his Notice of Appeal, this Court lacks jurisdiction. (Appellee's Br. at 1.) The trial court entered its final judgment on October 3, 2007, *nunc pro tunc* to August 17, 2006. Pursuant to Rule 9 of the Superior Court Rules, Walters's Motion for Reconsideration filed on October 16, 2007 was timely filed[6] as to the

---

[6] Rule 9 of the Rules of the Superior Court provides that:

In computing any period of time prescribed or allowed by these rules, the day of the act, event or default from which the designated period of time begins to run shall not be included. The last day of the period so computed is to be included, unless it is a Saturday, Sunday or legal holiday, in which event the period runs until the end of the next day which is neither a Saturday, Sunday nor a holiday. When a period of time prescribed or allowed by these rules is less than eleven days, intermediate Saturdays, Sundays and holidays shall be excluded from the computation.

SUPER. CT. R. 9. Under this Rule, October 4, 2007 (the next day after the judgment) was the first of the permitted 10 day period, and since the allotted days are less than eleven, inter-

October 3, 2007 *nunc pro tunc* Judgment. Importantly, Walters's time to appeal to this Court was tolled during the pendency of his Motion for Reconsideration.[7] The trial court entered its second final post-judgment Order on March 17, 2009. Walters filed his Notice of Appeal on April 15, 2009. Therefore, his appeal was timely. *See* V.I.S.Ct.R. 5(a)(1) ("the notice of appeal required by Rule 4 shall be filed with the Clerk of the Superior Court within thirty days after the date of entry of the judgment or order appealed from[.]").[8] Therefore, we will review the claims that Walters propounds on appeal.

We review contempt orders and associated findings of fact under an abuse of discretion standard, "uphold[ing] factual findings in the absence of clear error, [and] review[ing] legal questions *de novo*." *In re Rogers*, 56 V.I. 325, 334 (V.I. 2012). Additionally, denials of motions to alter or amend the judgment, which are brought pursuant to Superior Court Rule 50, are reviewed for abuse of discretion, while underlying legal determinations are reviewed *de novo*, and factual determinations are reviewed for clear error. *Howard Hess Dental Labs, Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 246 (3d Cir. 2010). *See also Island Tile and Marble, LLC v. Bertrand*, 57 V.I. 596 (Nov. 7, 2012) (adopting the same standard for reviewing a motion to reconsider as the standard for reviewing the denial of a motion to alter or amend under SUPER. CT. R. 50).

---

vening Saturdays, Sundays, and legal holidays – here Monday October 8, 2007 being Columbus Day – are not counted. Thus October 16, 2007 was the eighth day after entry of the *nunc pro tunc* judgment.

[7] Although Walters captioned his October 27, 2007 Motion "Defendant's Amended Motion for Reconsideration Findings by the Court — and/or Amendment," the first sentence of Walters's Motion reads as follows: "COMES NOW Defendant Melvin Walters Sr.[, r]espectfully moves this Honorable Court, pursuant to Federal Rule of Civil Procedure (52) (59) and (60) for [r]econsideration the [f]indings of [f]acts, [c]onclusions of [l]aw, and/or [a]mendment of the [c]ourt Order/Judgment entered October 3, 2007[.]" (Br. of Appellant's Br. at 14.) (emphasis omitted). Furthermore, a timely filed Motion for Reconsideration is treated as a Rule 59(e) motion to alter or amend the judgment, which is brought pursuant to Superior Court Rule 50. *Beachside Assocs., LLC v. Fishman*, 53 V.I. 700, 714-15 (V.I. 2010). Therefore, to the extent Walters relied upon Superior Court Rule 50, the time for filing his appeal was tolled during the pendency of his October 16, 2007 Motion which was amended on October 27, 2007. V.I.S.Ct.R. 5(a)(4).

[8] Although this was the rule at the time this present appeal was filed, V.I.S.Ct.R. 5(a)(1) has been amended and now requires the filing of notices of appeal with the Clerk of the Supreme Court.

## IV. DISCUSSION

This case concerns the parties' interests in two parcels of real property: the improved Estate Nazareth property and the unimproved Estate Frydenhoj property. It is noteworthy that Walters is prosecuting this appeal *pro se*. In many instances his filings are interspersed with random citations to case law precedent, and the purported substance of his arguments is confusing and confounding. Nonetheless, we address those issues and contentions which we believe can be discerned from his Notice of Appeal and from his brief, which is written by a lay person.

### A. The trial court properly exercised jurisdiction over the real properties that are the subject of this cause of action.

Walters asserts that the trial court lacked jurisdiction to consider Parrott's claim for partition of the Estate Nazareth property. Specifically, Walters asserts "[t]he [c]ourts have held that they do not have the jurisdiction to [p]artition this relationship or end it. . . . in the absence of a marriage . . . this sort of jurisdiction does not exist." (Appellant's Br. at 19.)

■ Walters is not wholly incorrect in his remonstration that in a jurisdiction such as ours, which does not recognize the doctrine of putative or common-law marriage, Parrott has no *legal* claim to interest in Walters's property on the basis of their cohabitation alone. *See Salzman v. Bachrach*, 996 P.2d 1263, 1268-69 (Colo. 2000) (cautioning that "mere cohabitation does not trigger any marital rights") (collecting cases). Walters fails to realize, however, that Parrott does have *equitable* claims in the property for the contributions she has made to the improvement and maintenance of the property during the parties' protracted period of cohabitation, encompassing the births of their two children. Courts have consistently exercised authority over the division of properties accumulated during the cohabitation of parties who are not legally married, on a case-by-case basis. For instance, one federal circuit court has opined that although a petitioner had no legal entitlement to property because common law marriage was not recognized in the jurisdiction in question, the petitioner was entitled to equitable division of property accumulated during cohabitation. *In re Wilbur*, 126 F.3d 1218, 1218-19 (9th Cir. 1997). *See also Metten v. Benge*, 366 N.W.2d 577, 579 (Iowa 1985) (court had jurisdiction because unmarried cohabitants had a

cognizable claim in equity to petition for division of property); *In re Long and Fregeau*, 158 Wn. App. 919, 244 P.3d 26, 29-30 (2010) (although the parties were not married, an equitable relationship existed and property could be equitably divided); and *Barber v. Barber*, 121 Conn. App. 96, 994 A.2d 284, 288 (2010) ("[a]lthough cohabitation alone does not create any contractual relationship or, unlike marriage, impose other legal duties upon the parties, where the parties have established an unmarried, cohabiting relationship, it is the specific conduct of the parties within that relationship that determines their respective rights and obligations, including the treatment of their individual property") (internal quotations marks omitted).

■ The record before us supports the trial court's conclusion that Parrott has an equitable interest in the Estate Nazareth Property. As the trial court recognized, Parrott has made numerous contributions to the upkeep, improvement, and maintenance of this property during the parties' prolonged relationship that included cohabitation. The parties relocated to Florida in 1982, to further their education, where they briefly resided. While there, it was agreed that Parrott would pay the expenses for household maintenance in Florida, while Walters paid for improvements to be made at the Estate Nazareth Property.[9] Parrott contributed more than her fair share in this agreement, because Parrott, who had no children at the time, contributed to the care, support and maintenance of Walters's children from a previous relationship. (Appellant's App. at 37.) When the parties returned to St. Thomas in or about 1984, Parrott moved into the Estate Nazareth Property, where she resided for over twenty years. Walters intermittently lived at the residence with Parrott. During her years of residence at the Estate Nazareth Property, Parrott contributed greatly to the upkeep and improvement of the property. Parrott made numerous payments towards the financing of the upkeep of the Estate Nazareth Property which were directly deducted from her payroll check. (Trial Tr. 43:1-7, Aug. 17, 2006.) At one point, Parrott was making payments of $279 bi-monthly towards the Estate Nazareth property. (*Id.*) Further, Parrott assisted Walters in obtaining a loan from which a portion of the funds were used to directly liquidate the mortgage on the Estate Nazareth

---

[9] Although the trial court's Findings Fact state that there was such an agreement, Walters contends that no such agreement was ever made. (Appellant's Br. at 18-19.) He makes no submission, however, to contradict the trial court's findings.

Property and the balance of the loan was used to to purchase the Estate Frydenhoj Property. (*Id.* at 72-73.) Walters and Parrott contributed their funds to a joint bank account from which the bank deducted funds to pay for loans used for the upkeep of the Estate Nazareth property. (*Id.* at 36-7 and 69.) This pooling of assets further supports an equitable division of the Estate Nazareth property. *See In re Baker*, 232 Ore. App. 646, 223 P.3d 417, 421 (2009) ("In general, an equitable property division on dissolution of a domestic partnership is appropriate where the parties' intent to share assets and expenses is shown by evidence that they have jointly purchased, built, or maintained property, held joint accounts, and made substantial economic and noneconomic contributions to the household for mutual benefit.") (citations omitted).

After Walters vacated the Estate Nazareth Property in 2002, Parrott remained at the residence with the parties' two children. She was the sole provider of financial support, because Walters failed to make any form of financial contribution to the parties' children.[10] (Trial Tr. 47-51, Aug. 17, 2006 and Appellant's App. at 37.) Further, all rents collected from apartments at the Estate Nazareth Property were collected and controlled by Walters. Walters never remitted any portion of these rents to Parrott or to the children he fathered with her. Parrott was eventually compelled to vacate the property because of threats and intimidation by Walters. Because of her circumstances, Parrott was relegated to the generosity of her friends and relatives for daily living expenses. (Status Hr'g Tr. 12:19-25, June 20, 2006).

Considering these facts, it is against the interest of justice and fairness to conclude that Parrott has no equitable interest in the Estate Nazareth Property because of her lack of legal title. Walters would be unjustly enriched by such an outcome. It is not unusual for cohabitants, whose relationships come to an end, to bring an action for compensation of services rendered and properties obtained during their relationship under equitable theories such as unjust enrichment, constructive trust, or equitable lien. *See In re McKim Estate*, 238 Mich. App. 453, 606 N.W.2d 30, 34 (1999) (*quantum meruit*) and *Obert v. Dahl*, 574 N.W.2d 747, 748-49 (Minn. Ct. App. 1998) (unjust enrichment; constructive trust). *See*

---

[10] Walters contends that this finding of the trial court is erroneous and that he made financial contributions to support his children. (Appellants Br. at 19.) Walters, however, submits nothing to demonstrate the contrary.

*also Porter v. Zuromski*, 195 Md. App. 361, 6 A.3d 372, 380 (Md. Ct. Sp. App. 2010) (constructive trust) and *Dietrich v. Winters*, 798 So.2d 864, 867 (Fla. Ct. App. 2001) (equitable lien). Indeed, the authority to partition the Estate Nazareth property under equitable principles is conferred upon the Superior Court under the RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 28 (2010)[11] which states in pertinent part:

> Unmarried Cohabitants
>
> (1) If two persons have formerly lived together in a relationship resembling marriage, and if one of them owns a specific asset to which the other has made substantial, uncompensated contributions in the form of property or services, the person making such contributions has a claim in restitution against the owner as necessary to prevent unjust enrichment upon the dissolution of the relationship.

It is incontrovertible that the Superior Court has jurisdiction in matters of unjust enrichment, equitable lien, and all other equitable theories. 4 V.I.C. § 76(a). Accordingly, the Superior Court was within its power to partition the Estate Nazareth Property. Therefore, because Parrott has an equitable interest in the 2W-62 Estate Nazareth property, Parrott could properly maintain an action for partition over the Estate Nazareth property. Essentially, although legal title to the Estate Nazareth property is not held in Parrott's name, her contributions to the maintenance of the property over the years afforded her an equitable claim in this property. (Appellee's App. at 10 and 12.) It is a well-known fact that the distinction between courts of law and courts of equity have long been abolished, and that actions in law and actions in equity have "been merged into one form of action — the civil action". *Three Keys Ltd. v. SR Utility Holding Co.*, 540 F.3d 220, 229 n.9 (3d Cir. 2008) (citation and internal quotation marks omitted).

Importantly, title 4, section 76 of the Virgin Islands Code vests the Superior Court with "original jurisdiction in all civil actions regardless of the amount in controversy[.]" 4 V.I.C. § 76(a). The Legislature of the Virgin Islands' use of the words "*all civil actions*," in section 76(a) evidences its intent that the statute be read comprehensively. Thus, the trial court properly exercised jurisdiction over Parrott's claim in the Estate Nazareth property. Therefore, Walters's contention that the

---

[11] The Restatements are made applicable to the Superior Court by virtue of 1 V.I.C. § 4.

Superior Court had no jurisdiction to adjudicate the parties' interest in a parcel of property in the Virgin Islands for which Walters and Parrott did not have joint legal title and based on a relationship in which these parties were not married to each other, is meritless.

█ With respect to the Estate Frydenhoj property, 28 V.I.C. § 451 is unambiguous that actions for partition may be initiated by those having legal interest in property as tenants in common.

> When several persons hold and are in possession of real property as tenants in common, in which one or more of them have an estate of inheritance, or for life or years, or when several persons hold as tenants in common a vested remainder or reversion in any real property, any one or more of them may maintain an action of an equitable nature for the partition of such real property according to the respective rights of the persons interested therein, and for a sale of such property, or a part of it, if it appears that a partition cannot be had without great prejudice to the owners.

28 V.I.C. § 451. Therefore, because Walters and Parrott purchased 29B Estate Frydenhoj as tenants in common, Parrot can also properly maintain an action for partition regarding this property.

## B. The trial court did not err in denying Walters's Motion for Contempt and for Sanctions against Parrott.

Walters alleges that the trial court abused its discretion in refusing to impose sanctions upon Parrott for her failure to timely obey the trial court's September 12, 2005 Order.[12] (Appellant's Br. at 21-25.) Essentially, Walters filed a December 7, 2005 Motion for Contempt and Sanctions, requesting that the trial court hold Parrott in contempt and sanction her for failing to comply with the trial court's September 12, 2005 Order. (Appellant's App. at 45-48.) On appeal, Walters argues that "Plaintiff refused to obey the order and failed to appraised [sic] property [at] 29B Estate Frydenhoj and failed to advise the Court of the principal balance owed on both [p]arcel No. 29B Estate Frydenhoj and parcel

---

[12] Walters's argument initially makes reference to a June 22, 2005 trial court Order. However, upon reading Walters's entire argument on the issue, it appears that he is contesting Parrott's failure to comply with the trial court's September 12, 2005 Order.

No. 2W-62 Estate Nazareth as required." (Appellant's Br. at 21.) Walters further alleges that Parrott failed to obey the trial court's order to "respond to all of Defendant's outstanding motions no later than Friday, December 2, 2005." (Appellant's Br. at 21) (emphasis omitted). Therefore, Walters concludes that he "has more than amply satisfied the applicable evidentiary standard for civil contempt. . . . Thus, a finding of contempt and sanctions are warranted." (Appellant's Br. at 25.)

 The power of Virgin Islands judicial officers to hold litigants in contempt is indisputable. A court in this jurisdiction has the power:

> (4) To compel obedience to its judgments, orders, and process, and to the orders of a judge out of court, in all actions, or proceedings pending therein; [and] (5) To control in furtherance of justice, the conduct of its ministerial officers and other persons in any manner connected with a judicial proceeding before it in every matter appertaining thereto; . . .

4 V.I.C. § 243. Title 4, section 281 enumerates the general powers of judicial officers when conducting proceedings and provides as follows:

> Every judicial officer shall have power:
> (1) To preserve and enforce order in his immediate presence and in the proceedings before him, when he is engaged in the performance of a duty imposed on him by law;
> (2) To compel obedience to his lawful orders;
> (3) To compel the attendance of persons to testify in a proceeding pending before him; and
> (4) To administer oaths to persons in a proceeding pending before him, and in all other cases where it may be necessary in the exercise of his powers of the performance of his duties.

4 V.I.C. § 281. Section 281 thus invests judicial officers with an array of powers so that they may ensure the orderly conduct of judicial proceedings. *See also In re Rogers*, 56 V.I. at 334.

 The discretionary power of Virgin Islands judicial officers to punish those who are convicted of contempt of court is likewise undeniable. The Virgin Islands Code explicitly states that "[a]ny person who willfully violates, neglects or refuses to observe or perform any lawful order of a court shall be guilty of contempt of court and upon being found guilty of such contempt may be punished as provided by law."

4 V.I.C. § 244. The Virgin Islands Code includes a civil contempt statute, which provides: "For the effectual exercise of the powers conferred [in the judicial powers provisions of 4 V.I.C. § 281,] *a judicial officer may punish* for contempt in the cases and in the manner provided by law." 4 V.I.C. § 282 (emphasis added). We have recently held that the Virgin Islands Legislature's use of the word "may" suggests the Legislature's intent to eschew mandatory action by the trial court. Rather, the word "may" suggests that the exercise of the power of the court described in a particular statute be exclusively within the court's discretion. *See Shoy v. People*, 55 V.I. 919, 927 (V.I. 2011) (noting that the word "may" in a statute strongly suggests a discretionary rather than a mandatory action").

■ Accordingly, whether a case is civil or criminal, it is unassailable that the decision to impose sanctions for contempt is wholly within the discretion of the trial court; therefore, unless it has abused its discretion by erroneously applying the law, violating an inherent constitutional protection, or making a clear error as to facts, the denial of the request for contempt will be affirmed. *See Grider v. Keystone Health Plan Central, Inc.*, 580 F.3d 119, 134 (3d Cir. 2009) and *In re Rogers*, 56 V.I. at 334.

■ Additionally, Walters does not argue that the trial court erroneously applied the law or committed clear error in its application of the facts, but merely expresses displeasure with the trial court's refusal to impose sanctions upon Parrott. Further, we have no basis to conclude whether the trial court erred in its refusal of Walters's Motion for Contempt and Sanctions. We are not provided in the appendices of either party with the trial court's order which Parrott allegedly refused to obey, nor are we provided with any order in which the trial court denied Walters's Motion for Contempt and Sanctions. Our rules clearly state that "[a]ll assertions of fact in briefs shall be supported by a specific reference to the record." V.I.S.CT.R. 22(d). *See also* V.I.S.CT.R. 22(a)(3) (stating that statements of issues presented for our review "shall include a designation by reference to specific pages of the appendix or other specific documentation in the proceedings at which each issue on appeal was raised, objected to, and ruled upon.") and V.I.S.CT.R. 22(a)(5) (stating that "[an] argument shall contain the contentions of the appellant with respect to each of the issues presented, and the reasons therefor, with citations to the authorities, statutes, *and parts of the record relied on*.") (emphasis added). Therefore, we are unable to review the trial court's reasoning for denying the Motion for Contempt and Sanctions, or to

determine if the Motion was ever denied. Accordingly, without more we conclude that Walters's contention and argument cannot be sustained.

### C. The trial court did not err in denying Walters's Motion for Recusal.

In its August 3, 2006 Order, the trial court denied Walters's Motion to Disqualify, which sought the recusal of the trial judge, partly because of Walters's failure to cite the correct statute in support of his Motion. (Appellant's App. at 42.) Subsequently, the trial court issued its Judgment, Findings of Fact and Conclusions of Law on October 3, 2007, *nunc pro tunc* to August 17, 2006. On or about March 2, 2009, Walters filed a second Motion to Recuse the trial court judge. (J.A. at 3.) In its March 17, 2009 Order, the trial court summarily denied Walters's assertion that the trial judge committed an abuse of discretion in refusing to recuse herself from this case.

Walters's argument regarding the trial judge's refusal to recuse herself from this case commences with an incomprehensible discussion and extensive, piecemeal quotations from various sources, including the United States Constitution. He asserts prejudice against him because of the trial court's Orders and the duties of Superior Court judges. (Appellant's Br. at 26-29.) Apparently copying and inserting language that was originally directed to the trial court judge, Walters asserts that:

> [Y]our honor, it has clearly been pointed out to the [c]ourt in a manner that any reasonable person can understand, that it's [sic] decision is impossible. That the [c]ourt has made obvious errors that is apparent to any reasonable person. These obvious errors were brought to the attention of the Court and were deliberately ignored.
>
> In light of this behavior of the Judge, the Defendant can only conclude that the Judge is on a mission that has nothing to do with the job the Law [sic] mandates her to perform. And if the judge is not doing the work of the [c]ourt then the Judge doesn't have the authority of the [c]ourt and the decision is therefore defective and invalid. . . .
>
> . . . If the Judge can not [sic] or will not perform her duties as Judge then she is obligated under Law [sic] to recuse herself.

(Appellant's Br. at 29.) Walters's brief contains other allegations, including a claim that the trial court "has mistakenly made a decision that isn't possible[.]" However, Walters fails to identify with specificity and clarity the

decision of the trial court to which he refers. Additionally, Walters fails to state precisely how the unspecified, allegedly erroneous decision of the trial court has prejudiced him.

■ Incongruent with the premises of Walters's argument, the Virgin Islands Code provides for the recusal of judges in four instances:

### § 284. Disqualifications of judge

No judge or justice shall sit or act as such in any action or proceeding:

(1) To which he is a party or in which he is primarily interested;

(2) When he is related to either party, or to an officer of a corporation which is a party, by blood or marriage within the third degree;

(3) When in the action or proceeding or in any prior action or proceeding involving the same issues, he has been of counsel for any party to the action or proceeding; or

(4) When it is made to appear probable that, by reason of bias or prejudice of such judge, a fair and impartial trial cannot be had before him.

4 V.I.C. § 284. None of these instances is alleged in Walters's arguments to this Court. More importantly, Walters never articulated how the trial court was biased or prejudiced towards either party. Rather, he merely disagrees with the trial court's decisions. Likewise, Walters makes inflammatory comments in his brief about the trial judge's performance and decisions without explicating the legal basis for his disagreement with those decisions. We conclude, therefore, that Walters has advanced no cognizable legal reason for the trial judge to have recused herself from this case.

■ The proper procedure to express disagreement with the trial court's orders and judgments is to file an appeal to this Court, challenging the specific trial court judgment or order upon which a party disagrees. Indeed, the effect on the judicial system would be absurd if a party were afforded the right to have a trial judge recused from a case every time a party disagrees with the court's judgment or order. Therefore, because Walters has otherwise failed to state with specificity the bases for his argument that the trial judge should have been recused, and because none of the bases alleged by Walters states a legitimate claim, we conclude that the argument that the trial judge should have been recused from this case must be rejected.

## D. The trial court did not err in denying Walters's Motion for Reconsideration or Motion for a New Trial.

Walters asserts that he "filed [the] motion to reconsider, asserting major inconsistencies between the court's oral recitation in its order on August 17, 2006 and the subsequent written order entered pursuant thereto on October 3, 2007." (Appellant's Br. at 30.) (emphasis omitted). In addition, he objects to the trial court rendering its decisions orally from the bench while directing Parrott's counsel to prepare a written order memorializing the decisions, as well as its findings of fact and conclusions of law. (Appellant's Br at 31.) Walters advanced similar arguments in his October 16, 2007 Motion for Reconsideration, as amended on October 26, 2007. Further, Walters argues that "a mistake has been committed; the court in awarding equity interest in the Nazareth Bay Property of $62,000.00 and in the Frydenhoj Property equal to one-half the purchase price of $35,000.00 to Plaintiff and all the debts to Defendant, failed to make an equitable division of the property. The court erred in calculating the equity interest on both properties[.]" (Appellant's Br. at 30.)

To address Walters's first argument, in a October 3, 2007 Judgment and an August 17, 2006, *nunc pro tunc* Order, the trial court entered its written Findings of Fact, Conclusions of Law and a Judgment. In both, the trial court expressly stated that it had "made its [f]indings of [f]act and [c]onclusions of [l]aw on the record[.]" (Appellant's App. at 34, 36). The Judgment also states that the trial court's findings of fact and conclusions of law were made on the record, but contains the additional language that those findings of fact and conclusions of law are "incorporated herein by reference," (*Id.* at 34.) Having reviewed the transcript of the August 17, 2006 proceedings that was submitted to us as part of this appeal, we conclude that while the trial court asked numerous questions and stated its reasons concerning a number of issues, it neglected to make explicit findings of fact and conclusions of law on the record. Therefore, without the benefit of the trial record or the trial court's oral Findings of Fact and Conclusions of Law, we cannot conclude that the trial court's written findings of fact and conclusions of law differ from its oral recitation from the bench. *See* V.I.S.Ct.R. 10(b)(1).[13]

---

[13] V.I.S.Ct.R. 10(b)(1) *states in pertinent part as follows:*

██ ██ The trial court did not err in directing Parrott's counsel to submit a draft order containing its findings of fact, conclusions of law and judgment. In declining to disturb a trial court's findings, the United States Court of Appeals for the Third Circuit, quoting the Supreme Court of the United States, has explicitly stated:

> A number of the [a]ppellants argue that these factual findings were not the product of Judge Gardner's independent judgment because his findings very closely resembled [p]laintiffs' Proposed Findings of Fact and that, therefore, the [trial court's] reliance on [p]laintiffs' version of events constituted a due process violation. . . . We reject this argument because, as the Supreme Court has held, *"even when the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous."*

*Grider*, 580 F.3d at 136 n.17 (emphasis added) (quoting in part from *Anderson v. City of Bessemer City*, 470 U.S. 564, 572, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985)). Walters has not provided this Court with any evidence demonstrating that the trial court's findings are clearly erroneous. For instance, Walters contends that, unlike what is asserted in the findings of facts, he provided child support for the children he fathered with Parrott. However, there is nothing in the record before us that verifies such claims. Walters also alleges that he purchased the Estate Nazareth property with a two-story dwelling already constructed upon it, which is contrary to the trial court's findings of fact. (Appellant's Br. at 17.) Not only is the record before us absent of any documentation verifying this claim, but Walters testified at trial that he made substantial additions to the property shortly after purchasing it. (Trial Tr. 5:9-13 & 6:2-11, Aug. 17, 2006.) *See* V.I.S.Ct.R. 10(b)(1).[14] Further, Walters does not argue that he was denied an opportunity to present evidence, if any existed, to the trial court to support his contentions concerning his version of the facts. Instead, he makes unsubstantiated allegations regarding the conclusions of law, and contends that he was denied the

---

(b) The Transcript of Proceedings; Duty of Appellant to Order; Notice to Appellee if Partial Transcript Is Ordered.

> (1) If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion.

[14] Note 11, *supra.*

opportunity to approve the findings of facts and conclusions of law prior to their adoption by the trial court. Walters fails to acknowledge that it is his duty and responsibility as the Appellant to present this Court with all evidence and trial records that would substantiate his claims. *See* V.I.S.CT.R. 22(a)(3), (d).

When the trial court adopted or confirmed the submissions from Parrott's counsel, those submissions became the trial court's official findings of fact and conclusions of law. Walters does not cite to any authority, nor are we aware of any, that a trial court must secure approval from a party prior to adopting its findings of fact and conclusions of law, even if they are prepared by one of the parties' counsel and submitted to the trial court as directed by the trial court, as occurred in this case.

█ The record reflects that the trial judge entered her findings of fact and conclusions of law after hearing the testimonies of both parties. (Status Hr'g Tr. 10:7:16, 13:13-17, March 12, 2009.) The trial court's findings appear to be reasonable based on testimony elicited at trial. We will not reverse where a trial court's adopted conclusions and findings are consistent with what is reflected in the record. *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1445 (9th Cir. 1985) ("The verbatim adoption of findings suggested by a party is not automatically objectionable, however, so long as those findings are supported by the record.") (citing *United States v. El Paso Natural Gas Co.*, 376 U.S. 651, 656, 84 S. Ct. 1044, 12 L. Ed. 2d 12 (1964)) and *Aiken County v. BSP Div. of Envirotech Corp.*, 866 F.2d 661, 677 (4th Cir. 1989).

Walters does not argue that the trial court impeded him from presenting or proving his version of facts, nor does he present any reasons why his version of facts were not made known and proven to the trial court. He only claims that he was prevented from accessing documents pertaining to expenses he incurred in improving the Estate Nazareth property, for which he believes he should be reimbursed. We address this issue in detail below. Therefore, without more, Walters's argument concerning the trial court's findings of facts and conclusions of law is meritless.

We next address Walters's argument that the trial court erred in denying his Motion to Reconsider or Amend the Judgment. Rule 50 of the Rules of the Superior Court provides that, "[f]or good cause shown, the court, upon application and notice to the adverse party, may set aside an entry of default, judgment by default or judgment after trial or hearing. Rules 59 to 61, inclusive, of the Federal Rules of Civil Procedure shall

govern such applications." SUPER. CT. R. 50. Prior to the March 26, 2009 amendments, Federal Rule 59(e) provided that "a motion to alter or amend a judgment must be filed no later than 10 days after the entry of the judgment." Further, Rule 60 of the Federal Rules of Civil Procedure provides:

> (b) GROUNDS FOR RELIEF FROM A FINAL JUDGMENT, ORDER, OR PROCEEDING. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; [or]
> . . . .
> (6) any other reason that justifies relief.

FED. R. CIV. P. 60(b).

Importantly, much discussion was directed to Walters's claims for reimbursement of expenses at the August 17, 2006 proceeding. During the testimony concerning the numerous expenses for which Walters sought reimbursement, the trial court asked Walters to substantiate each of the claims. In one instance, which is similar to many others throughout the proceeding, the following dialogue ensued between the trial court and Walters:

> THE COURT: So you are unable to trace all of these payments that were made from June 17, 1998 until July of 2002?
> THE WITNESS: That is incorrect.
> THE COURT: You don't have any receipts; do you?
> THE WITNESS: Yes, I do.
> THE COURT: Where are they?
> THE WITNESS: They are in the file. The reason why —
> THE COURT: Which file?
> THE WITNESS: This case has been going on for over three years. I have been submitting documents.

413

THE COURT: Do you have anything in this trial to show that you made all these payments from June 17, 1998 to July of 2002?

THE WITNESS: Presently, I don't because all of my documents are in the possession of Ms. Parrott at 2W-62 Estate Nazareth. I was unable to access the front of the property, but all of those documents has [sic] already been filed with the court.

THE COURT: I'm asking you. What had been filed in the Court then you should have it to produce now if it's in the court.

. . .

THE COURT: Is the earliest one that you have Exhibit 3A, September of 2003?

. . .

THE WITNESS: Yes, Your Honor.

. . . .

(Aug. 17, 2006 Trial Tr. at 62-64.) Similar colloquies transpired concerning Walters's claims seeking reimbursement for real property taxes, mortgage payments and other alleged expenditures related to the properties. The trial court's primary concern with the claims for alleged expenditures is summarized in its response when Walters argued that he paid all the property taxes on the 29B Estate Frydenhoj property. The trial court responded: "[b]ut you haven't shown that you have. I'm here to rule on what the evidence shows." (*Id.* at 68.)

Walters alleges that a May 7, 1992 appraisal, and a number of other documents originating on various dates between 1979 and 1992, are newly discovered evidence. (Appellant's Br. at 7.) (Aug. 17, 2004 Trial Tr. at 15.) The trial record submitted to us, which may not be the complete trial record, fails to indicate whether the expenses for which reimbursement was sought were awarded, deferred or rejected, and whether any such disposition was in part or in its entirety. Nonetheless, Walters fails to demonstrate that the expenses for which he claims he is entitled to reimbursement reflect newly discovered evidence that was not available to be presented at trial.

■ Rule 60(b)(2) provides that "the [trial] court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule

59(b)[.]" Importantly, "[u]nder Rule 60(b)(2) the phrase newly discovered evidence refers to evidence of facts in existence at the time of trial of which the aggrieved party was excusably ignorant." *United States v. 27.93 Acres of Land*, 924 F.2d 506, 516 (3d Cir. 1991) (*citing Brown v. Pennsylvania R.R.*, 282 F.2d 522, 526-27 (3d Cir. 1960) (internal punctuation marks omitted)).

▇ We agree that had the appraisal and documents to which Walters refers been presented at trial, the trial court's decision could have been different. (*See, e.g.*, Trial Tr. at 62-64, *supra*.) However, Walters has not demonstrated, and we cannot conclude based on the record before us, that these documents could not have been presented at trial by his use of reasonable diligence at that time. When the trial court asked Walters to present these same documents at the August 17, 2006 trial, he responded that he could not produce the documents because they were in Parrott's possession. The record on appeal clearly reveals that, at the time of trial, Walters was aware of the documents that he now designates "newly discovered evidence." Therefore, since the May 7, 1992 appraisal and other documents were in existence at the time of trial, these documents cannot constitute "newly discovered evidence." Moreover, Walters was not ignorant, let alone excusably ignorant, of their existence at the time of trial. Therefore, the trial court did not err in denying Walters's Motion for Reconsideration based on Newly Discovered Evidence.[15]

## V. CONCLUSION

Walters and Parrott own the Estate Frydenhoj property as tenants in common. Parrott filed an action for partition of that property and therefore the trial court did not err in finding that it had jurisdiction over the Estate Frydenhoj property. Concerning the Estate Nazareth property, Parrott asserted a constructive or equitable interest in that property. The trial court was correct in exercising jurisdiction over the Estate Nazareth property because it is statutorily vested with such jurisdiction under title 4, section 76(a) of the Virgin Islands Code. Next, the trial court did not err

---

[15] Walters also asserts that the trial court erred in denying his Motion for a Preliminary Injunction seeking an order for Parrott to cease 'trespassing' on the Estate Nazareth Property and other demands. The trial court entered a final judgment with respect to both parties' interest in the respective properties. Accordingly, any entitlement to a preliminary injunction is now moot.

415

in denying Walters's Motion for Contempt and Sanctions against Parrott because the power to issue such sanctions lies within the discretion of the trial court. Walters failed to articulate or to present a legal basis warranting the trial court's recusal; therefore, the trial court properly denied his Motion for Recusal. The trial court was correct in denying the Motion for Reconsideration based on newly discovered evidence because Walters failed to present the trial court with any "newly discovered evidence" within the intendment of FED. R. CIV. P. 60(b)(2) of which he was excusably ignorant. Further, the trial court did not err in directing Parrott's counsel to memorialize its oral findings of fact and conclusions of law in a draft order, which it subsequently adopted. Furthermore, because Walters failed to provide this Court with proof that he filed a motion for preliminary injunction in the Family Division of the Superior Court, we are precluded from finding that the trial court erred in denying his Motion for Preliminary Injunction allegedly filed on September 19, 2005.

In consideration of the foregoing, the Judgment and Orders of the trial court are AFFIRMED.