# IN THE MATTER OF THE APPLICATION FOR CUSTODY OF: N.A.W. & D.I.W., minors

S. Ct. Civil No. 2013-0082

Supreme Court of the Virgin Islands

July 10, 2014

EMILE A. HENDERSON, III, ESQ., Law Offices of Yvette D. Ross-Edwards, St. Croix, USVI, *Attorney for Appellant*.

CYNTHIA B. MOORE, ESQ., Legal Services of the Virgin Islands, Inc., St. Croix, USVI, *Attorney for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(July 10, 2014)

HODGE, *Chief Justice*. Lauren I. Williams moved the Superior Court to hold Janice Kiture in contempt for violating a court order and to sanction her for failing to comply with the parties' child custody agreement on two separate occasions. Finding no reversible error, we affirm the Superior Court's September 19, 2013 Order.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

Williams and Kiture are the father and mother, respectively, of N.A.W. and D.I.W., both minor children. Williams, who appeared *pro se*, and Kiture, who was represented by counsel, entered into a stipulated agreement regarding custody and visitation of their children on October 19, 2012. Pursuant to the agreement — and relevant to this case — both

146

parents retain joint legal custody of the children. Kiture has physical custody of the children and Williams has weekend visitation rights, with pickups each Friday after 5:00 p.m. and drop-offs each Monday by 7:30 a.m. Williams also has a three-week summer visitation with the children, beginning the third week of July. On the first and third Sunday of each month, Kiture may collect the children from Williams and bring them to church services. Additionally, the children may attend "other weekend church services by mutual agreement of the parties." Also, the agreement allows the parents to modify it without court assistance as long as the modification is in writing, signed by both parties, and notarized. The agreement was approved by the Family Division of the Superior Court and entered as a court order on November 15, 2012.

Williams alleges that the first incident of noncompliance with the agreement occurred on October 26, 2012, about a week after the parties signed the agreement but three weeks before the Superior Court entered it as a court order. Williams claims that he went to Kiture's home that Friday to pick up the children but was greeted by Kiture instead, who informed him that the children were not at home and that he could not take them for the weekend. Williams contacted the police seeking assistance in enforcing the agreement but was unsuccessful, although a police report documenting the incident was generated. Williams also wrote a *pro se* letter dated November 5, 2012, to the Superior Court informing it of Kiture's non-compliance and requesting that the court add two modifications to the agreement; the first requested modification would authorize a monetary penalty against either party for non-compliance with the agreement, and the second would grant local law enforcement officers the authority to enforce paragraphs 3 and 13 of the agreement.[1]

The second incident occurred on Friday, January 25, 2013. Once again, Williams arrived at Kiture's home but the children were not there and he was unable to exercise his weekend visitation right. Williams once again complained to the police but was advised that the police were unable to assist him without a court order directing them to place the children in his

---

[1] Paragraph 3 states that Williams "shall have visitation with the minor children on the weekends" and paragraph 13 allows Kiture to bring the children to church services on the first and third Sunday of each month and "other weekend church services by mutual agreement of the parties."

care. Kiture, on the other hand, stated that she had attempted to communicate with Williams about keeping the children that weekend because she wanted them to attend a church event with her. Kiture testified that she made multiple phone calls, left voice messages, sent a letter, and instructed the children to inform Williams of her intent to keep them that weekend. As a result of this incident, Williams wrote a second *pro se* letter to the Superior Court, dated March 13, 2013, informing the court of Kiture's alleged violations and once again seeking to modify the agreement.[2]

After receiving no response to his letters from the Superior Court, on May 28, 2013, Williams, now represented by counsel, filed a motion seeking to have Kiture show cause as to why she should not be held in contempt and sanctioned for violating the agreement. The Superior Court conducted a hearing on the motion on September 6, 2013, at which both parties testified. Kiture claimed that she should not be found in contempt or sanctioned because Williams also violated the agreement when he failed to pick up the children for the summer visitation, and that her infractions were not willful, but the result of communication problems between the parties.

The Superior Court orally denied Williams's motion for contempt at the September 6, 2013 hearing, and memorialized the decision in a September 19, 2013 Order. The Superior Court found that the parties "do not communicate with each other" and "are unable to resolve any necessary changes to the visitation schedule." The Superior Court also found that both parties failed to completely comply with the visitation arrangements as laid out in the agreement. Finally, the Superior Court refused to hold Kiture in contempt because the court found there was insufficient evidence that Kiture willfully violated the agreement and because Kiture made reasonable attempts to communicate scheduling conflicts with Williams. Williams timely filed a notice to appeal with this Court on October 1, 2013. *See* V.I.S.CT.R. 5(a)(1).

---

[2] Williams certified that he served copies of both the November 5, 2012 and March 13, 2013 letters and accompanying exhibits on Kiture's attorney of record.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

This Court has appellate jurisdiction over "all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4, § 32(a). The Superior Court's September 18, 2013 Order resolved all claims between the parties and thus constitutes a final appealable order. *Tutein v. Arteaga*, 60 V.I. 709, 714 (V.I. 2014).

This Court "review[s] contempt orders and associated findings of fact under an abuse of discretion standard, 'uphold[ing] factual findings in the absence of clear error, [and] review[ing] legal questions *de novo*.' " *Walters v. Parrott*, 58 V.I. 391, 400 (V.I. 2013) (quoting *In re Rogers*, 56 V.I. 325, 334 (V.I. 2012)). "A finding of fact is clearly erroneous only where it '(1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.' " *Jung v. Ruiz*, 59 V.I. 1050, 1062 (V.I. 2013) (quoting *Madir v. Daniel*, 53 V.I. 623, 630 (V.I. 2010)).

### B. Motion to Show Cause

 In an effort to enforce his visitation rights with their children, Williams requested that the Superior Court hold Kiture in contempt. His motion is a request to hold Kiture in civil contempt, as opposed to criminal contempt, because Williams is seeking to enforce his rights by compelling Kiture to obey a court order. *See In re Najawicz*, 52 V.I. 311, 339 (V.I. 2009) ("[C]ivil contempt proceedings . . . are intended to enforce the rights of private parties, to compel obedience to orders and decrees made to enforce their rights and to give them a remedy to which the court deems them entitled." (quoting *U.S. Steel Corp. v. Fraternal Ass'n of Steel Haulers*, 601 F.2d 1269, 1273 (3d Cir. 1979))). " 'To prove civil contempt the court must find . . . that (1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order.' Importantly, '[a] contempt citation should not be granted if there is ground to doubt the wrongfulness of the defendant's conduct.' " *In re Najawicz*, 52 V.I. at 339 (quoting *Harris v. Philadelphia*, 47 F.3d 1311, 1326 (3d Cir. 1995)). A court should not enter a finding of contempt unless "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and

convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *In re Burke*, 50 V.I. 346, 352 (V.I. 2008) (internal quotation marks and citations omitted). Thus, while one parent's willful interference with the other parent's court-ordered visitation rights may merit contempt sanctions, it is the moving parent who carries the burden of persuading the Superior Court to impose contempt sanctions. *See Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) ("it is not ordinarily the alleged contemnor's burden to show compliance" with a court order). Accordingly, we give considerable deference to the Superior Court's determination of whether this burden has been successfully carried. *Walters*, 58 V.I. at 407 ("[I]t is unassailable that the decision to impose sanctions for contempt is wholly within the discretion of the trial court. . . .").

■ Here, the evidence indicates that Williams was unable to visit with his children on two separate occasions. One of those incidents occurred on October 26, 2012, before the Superior Court entered the court order on November 15, 2012, and thus, as the court order had not yet been in place, that incident cannot form the basis for a contempt finding. *In re Najawicz*, 52 V.I. at 339 (a valid court order must be in place to prove civil contempt); *Joseph v. Bureau of Corr.*, 54 V.I. 644, 652 (V.I. 2011) (same).

■ As for the January 25, 2013 incident, we agree with Williams that the children were not made available as required. Kiture testified that she wanted to keep the children that January weekend so that they could attend a church function. Although she made multiple attempts to speak with Williams to alter the visitation schedule — with Williams himself admitting he refused to take her calls — she was ultimately unable to acquire Williams's approval for a schedule change. Therefore, Williams has shown that (1) a valid court order existed, (2) Kiture had knowledge of the order, and (3) Kiture disobeyed the order by unilaterally making a conscious and deliberate decision to not provide the children to him for his weekend visitation. *See In re Najawicz*, 52 V.I. at 339. Furthermore, the court order was clear and unambiguous as to what was required of the parties and there is no doubt that, in the absence of mutual agreement to change the schedule for additional church attendance, Kiture violated the order by not making the children available to Williams on January 25, 2013. *See In re McIntosh*, S. Ct. Civ. No. 2012-0013, 2013 V.I. Supreme LEXIS 11, at *11 (V.I. Mar. 14, 2013) (unpublished). Thus, the Superior

Court erred in determining there was insufficient evidence that Kiture willfully disobeyed the order.

However, just because the Superior Court *could* have held Kiture in contempt does not mean that it was *required* to do so, for the decision to impose the contempt sanction rests in the sound discretion of the Superior Court. *Walters*, 58 V.I. at 407. In this case, the Superior Court considered the fact that Williams' did not pick up the children for summer visitation — a three week period — without informing Kiture that he would not be taking them[3] and thus "both parties . . . failed to fully comply with the visitation schedule[.]" (J.A. 4.) Despite Williams's assertion that the Superior Court should not have considered this incident because he was not the subject of the contempt hearing,[4] the Superior Court may properly consider evidence of both parties' conduct regarding a court order when determining whether a civil contempt sanction is appropriate. *See, e.g.*, *Montano v. Libby*, No. FA 960330182S, 1997 Conn. Super. LEXIS 736, *3 (Conn. Super. Ct. Mar. 20, 1997) (unpublished) ("Since both parties were in effect in contempt of court . . . neither party will be found to be in contempt."); *Cossitt v. Cossitt*, 975 So. 2d 274, 280 (Miss. Ct. App. 2008) ("Since neither party had clean hands . . . the trial court was correct in not finding [the husband] in contempt." (citing *Brennan v. Brennan*, 605 So. 2d 749, 752 (Miss. 1992))); *Dureiko v. Dureiko*, 2010-Ohio-5599, ¶ 15 (Ohio Ct. App. 2010) (unpublished) (the trial court did not abuse its discretion in declining to hold appellee in contempt "[b]ased upon both parties' failure to follow the terms of the court's order"). Therefore, while one party's breach of a court order does not necessarily excuse a breach by the other, the Superior Court properly exercised its discretion when it declined to impose a contempt sanction on Kiture, given that Williams had also willfully breached the court order.

Therefore, although Williams presented sufficient evidence showing that Kiture willfully violated the agreement, we conclude that the

---

[3] The record indicates that Williams did not want to take the children for their summer visitation because his wife had just given birth to their baby and because he was living on only $300 per month, which was insufficient to care for N.A.W. and D.I.W. for such a long period of time.

[4] This incident notwithstanding, the Superior Court also correctly considered the lack of any major conflicts between the parties leading up to the September hearing, indicating that the parties had learned to abide by the agreement's terms.

Superior Court correctly considered all of the evidence and did not abuse its considerable discretion in declining to hold Kiture in contempt.[5]

## III. CONCLUSION

For the foregoing reasons, we affirm the Superior Court's September 19, 2013 Order denying Williams's motion to show cause as to why Kiture should not be held in contempt and sanctioned for violating their Agreement.

---

[5] In his appellate brief, Williams also argues that he was prejudiced by the Superior Court's lack of response to his November 5, 2012 and March 13, 2013 letters. Although the agreement and subsequent court order do not indicate what steps must be taken should one party violate the agreement, the Superior Court could have construed Williams's two letters to the Superior Court as motions to modify the agreement. *See Etienne v. Etienne*, 56 V.I. 686, 691 n.5 (V.I. 2012) ("[I]t is our policy to give *pro se* litigants greater leeway in dealing with matters of procedure and pleading." (internal quotation marks and alteration omitted)); *Simpson v. Golden*, 56 V.I. 272, 280 (V.I. 2012). Because the Superior Court did not promptly act in addressing Kiture's violations of the agreement, Williams claims he was prejudiced "for months" by having "to deal with constant violations of the [a]greement" and that his July breach would not have been considered by the Superior Court if it had heard the case earlier, We find this argument wholly without merit, in that there were no claimed major incidents after March 2013 and Williams could have ensured that evidence of his own breach would not have been considered by simply not breaching the agreement in the first place. In any event, it is well established that a judge possesses considerable discretion in how to dispose of the matters on his or her docket, and the delay between the filing of Williams's March 13, 2013 letter and the Superior Court's September 6, 2013 hearing is not so great as to constitute a denial of due process or a failure to exercise jurisdiction. *See In re Elliot*, 54 V.I. 423, 429 (V.I. 2010) (citing *In re Robinson*, 336 Fed. Appx. 171, 172 (3d Cir. 2009)).