**BARRY J. BRADFORD, Appellant/Defendant**

**v.**

**GAYLE E. CRAMER, Appellee/Plaintiff**

S. Ct. Civ. No. 2009-0087

Supreme Court of the Virgin Islands

March 18, 2011

RENEE D. DOWLING, ESQ., The Law Offices of Renee D. Dowling, St. Croix, USVI, *Attorney for Appellant*.

BRUCE P. BENNETT, ESQ., Hunter Cole & Bennett, St. Croix, USVI, *Attorney for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(March 18, 2011)

HODGE, C.J. Barry Bradford appeals an August 11, 2009 Family Court Order requiring Bradford to pay Gayle Cramer $6,000 for the parties' credit card debts, $1,300 per month for child support, and $1,500 for alimony. Bradford also challenges the Family Court's order requiring him to provide a home free of rental charges for Cramer and the parties' minor child C.B. For the reasons that follow, this Court affirms in part and reverses in part.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

The parties were married on July 13, 1996, and there is one child born of the marriage, C.B. On June 22, 2009, the parties were granted partial summary judgment on the issue of divorce only. A final hearing was held on the issues of custody, child support, alimony, and distribution of personal property before the Family Court on July 14, 2009. At the final

hearing the only witnesses to testify were Cramer and Bradford. The parties agreed that physical custody of the minor child C.B. would remain with Cramer, and that the parties would share joint legal custody. On August 11, 2009, the Family Court issued a written order requiring Bradford: 1) to pay the sum of $6,000 to Cramer to help liquidate the parties' credit card debts; 2) to pay the sum of $1,300 per month to Cramer for the support of the parties' minor child, C.B.; 3) to pay the sum of $1,500 as and for alimony; and 4) to provide a home free of rental charges for Cramer and the parties' minor child at No. 85 Miss. Bea Road, St. Croix, Virgin Islands for as long the parties' minor child resides on the island of St. Croix and until he graduates from high school. Bradford filed his timely notice of appeal on September 10, 2009.[1]

On appeal, Bradford makes four arguments. First, Bradford argues that the trial court erred in awarding $6,000 to Cramer because there was no proof of the amount Bradford charged on Cramer's credit cards. Second, Bradford states that the trial court erred in ordering him to pay $1,300 per month in child support because the trial court failed to consider the relevant factors necessary to determine the amount of child support to be awarded. Third, Bradford contends that the trial court's order requiring Bradford to pay $1,500 in and for alimony is void for vagueness. Finally, Bradford argues that the trial court erred in ordering him to provide rent free housing at No. 85 Miss. Bea Road because Bradford does not own that property.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a) (Supp. 2008). Since the Superior Court's Memorandum Opinion and Order constitutes a final judgment, this Court possesses jurisdiction over Bradford's appeal.

Our standard of review in examining the Superior Court's application of law is plenary, while findings of fact are reviewed only for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I.

---

[1] *See* V.I.S.CT.R. 5(a)(1).

2007). Likewise, this Court's review of the trial court's construction of a statute is plenary. *V.I. Pub. Serv. Comm'n v. V.I. Water & Power Auth.*, 49 V.I. 478, 482 (V.I. 2008), *cert. denied*, No. 08-3398, slip op. at 1 (3d Cir. Jan. 19, 2009).

### B. The Family Court Did Not Err in Awarding $6,000 to Cramer to Help Liquidate the Parties' Credit Card Debts

On appeal, Bradford claims that the trial court erred in awarding Cramer $6,000 to help liquidate the parties' credit card debts. Bradford bases his contention on the trial court's finding of fact, which states "Cramer introduced no evidence at trial which would allow the Court to determine what portion of the credit card debt can be attributed to Barry Bradford." Thus, Bradford argues that because Cramer failed to prove what portion of the credit card debt can be attributed to Bradford, the trial court's award of $6,000 must be based merely on speculation or guess, and the trial court improperly awarded $6,000 to Cramer.

While Bradford does correctly cite the trial court's finding of fact, this single finding of fact must not be read in isolation, but instead, in conjunction with all of the trial court's findings of fact and the testimony of the parties. Looking at the trial court's findings of fact, conclusions of law, and order, in its entirety, it is clear that the trial court's use of the wording "any evidence" refers only to tangible physical evidence, such as papers or documents.

According to the testimony of both Cramer and Bradford, Cramer provided Bradford with, and allowed him to use, at least two of her credit cards. Furthermore, both parties testified that Bradford used her credit cards to purchase tools for his painting business, flights to and from Boston several times a year, and other personal incidentals. Cramer testified that Bradford's use of her credit cards contributed to the significant amount of credit card debt she incurred during their marriage. Cramer also testified that between $12,000 and $15,000 of that debt is personally attributable to Bradford. During Bradford's testimony he freely admitted that he is responsible for some of the credit card debt accumulated during the marriage. Bradford, however, did not testify to any specific amount that could be attributable to him. Instead, he only stated that it did not total $12,000 to $15,000.

Based on the testimony of both Cramer and Bradford, the trial court concluded that Cramer had incurred credit card debts, and that a portion

of those debts were attributable to Bradford. The trial court determined that Bradford was accountable for $6,000 of the parties' credit card debts. Although the trial court did not specify as to how it reached this amount, the parties' testimony provides sufficient evidentiary support for its decision. *See Daniel*, 49 V.I. at 329 ("Findings of fact are reviewed on appeal under a clearly erroneous standard of review. The appellate court must accept the factual determination of the fact finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.") (internal citations and quotations omitted). The trial court, therefore, did not err in awarding Cramer $6,000 to help liquidate the parties' credit card debts.

## C. The Family Court Erred in Ordering Bradford to Pay $1,300 Per Month in Child Support Without Applying the Child Support Guidelines

Bradford also appeals the trial court's order requiring him to pay $1,300 per month in child support. He argues that the trial court failed to consider and apply the specific rules applicable in determining child support in this jurisdiction. Specifically, he claims the trial court failed to consider "mandatory deductions, such as federal, state, and local taxes, Social Security and other mandatory retirement and disability contributions; union dues; insurance payments (which covers the minor child also); credit for any other children entitled to support, etc." Bradford claims that because the trial court failed to consider and apply the specific rules, his payments were improperly calculated based on his gross income instead of his net income.

In this jurisdiction, a court *must* follow the Child Support Guidelines in all proceedings containing an action for child support. 16 V.I. R&R § 345-01 (1991). Under 16 V.I.C. § 345(b),

> [i]n any proceeding to establish or modify a child support obligation . . . the child support guidelines established pursuant to subsection (c) of this section shall apply. The guidelines **shall** create a rebuttable presumption that the amount resulting from the application thereof is the correct amount of child support to be awarded. Application of the guidelines shall extend to proceedings setting child support amounts pursuant to agreement, stipulation or consent.

(emphasis added). Title 16, section 345(c) of the Virgin Islands Code provides that:

> The child support guidelines shall be based on specific, numeric and descriptive criteria that result in the computation of child support amounts. The guidelines shall be based on a cost-sharing approach in that the child's (children's) needs are divided proportionally between the parents/custodians based upon their relative incomes. . . . The guidelines may be modified or disregarded if it is determined that injustice would result from the application thereof. Such determination **must** be based on criteria taking into consideration the best interests of the child (children), and further **must** be supported by specific and written findings of fact, including, at a minimum, the amount that would have been established by the guidelines and the reasons for the variance therefrom. The Attorney General **shall adopt the format and prescribe such rules and regulations as are necessary for the computation of child support amounts pursuant to the guidelines set forth herein** as well as such rules and regulations as are necessary to establish criteria allowing for determination rebutting the presumptive guidelines established hereby.

(emphasis added). The Attorney General has proscribed specific rules and regulations that must be followed in computing child support. *See* 16 V.I. R&R § 345-05; 16 V.I. R&R § 345-07; 16 V.I. R&R § 345-08. Under these rules and regulations:

> The Family Division of the [Superior] Court . . . **shall** make available to the parties to any child support action copies of Child Support Worksheet Forms "A" and "B". The person on whose behalf a child support action is filed **shall** complete Worksheet Form "A", Sections 1 through 5, (Petitioner Colum) and Worksheet Form "B", Sections 1 through 8, and have same available prior to a final hearing on the issue of child support. The person against whom a child support action is filed **shall** complete Worksheet Form "A", Sections 1 through 5, (Respondent Colum), and have same available prior to a final hearing on the issue of child support. . . . Worksheet Forms **shall** be signed and notarized by the respective parties. . . . The Court . . . upon making findings of fact within the parameters of the Worksheet forms as to the parties' income and the child(ren)'s needs, **shall** direct completion of Work-

sheet Form "A", Sections 6 through 9, pursuant to the computations directed thereon, in order to determine the amount of the child support obligation to be awarded.

(emphasis added).

■ It is unclear from the record how the Family Court determined Bradford's monthly child support obligation. The trial court failed to make a finding of fact as to Bradford's income. It also failed to make a finding of fact as to C.B.'s needs. Furthermore, there is no mention in the record of the parties or the trial court's use of the Child Support Worksheet Forms "A" and "B." It is unapparent from the record whether the trial court followed the Child Support Guidelines in calculating Bradford's monthly child support obligation. Therefore, the child support award will be vacated and the issue of child support will be remanded to the Family Court for a determination under the Child Support Guidelines. *See Armstrong v. Armstrong*, 266 F. Supp. 2d 385, 398 (D.V.I. 2003) (vacating and remanding trial court's award of child support for failure to adhere to the child support guidelines).

## D. The Family Court's Order Requiring Bradford to Pay $1,500 in Alimony is not Vague

■ Bradford next argues that the trial court's order requiring him to pay alimony of $1,500 is void for vagueness. According to the trial court's order, "effective August 1, 2009 the defendant Barry Bradford shall pay to the plaintiff Gayle Cramer, the sum of $1,500.00 as and for alimony." The trial court's order goes on to state that the "alimony shall be for a period of three (3) years, with the final payment being made on August 1, 2012." Bradford contends that the trial court's failure to specify whether the $1,500 is to be paid daily, weekly, bi-weekly, monthly, or annually renders the trial court's order vague and unable to be followed. Although the trial court's order fails to specify the frequency of Bradford's alimony payments, title 16, section 347 of the Virgin Islands Code dictates that "[p]ayments for support shall be made monthly." Further, 16 V.I.C. § 341(g) defines "support" as "any amount that the court . . . may require a person to pay under . . . a final judgment, order or decree, and may include alimony." Accordingly, we interpret the Family Court's order to require Bradford to pay alimony to Cramer in the amount of $1,500 per month for a period of three years beginning on

August 1, 2009 and ending with a final payment on August 1, 2012. On remand, however, the trial court may wish to amend its judgment to specify the frequency of Bradford's alimony payments to avoid further confusion.[2]

### E. The Family Court Erred in Ordering Bradford to Provide Cramer and C.B. with Rent Free Housing at No. 85 Miss. Bea Road

■ As his last issue on appeal, Bradford contends that the Family Court erred when it required him to provide Cramer and C.B. with rent free housing at No. 85 Miss. Bea Road.[3] Specifically, Bradford argues that because the property does not belong to him, it is legally impossible for him to comply with the Family Court's order. Alternatively, Bradford argues that the trial court's order impinges on the rights of a third party — his nephew and the owner of No. 85 Miss. Bea Road, Christopher Brock Barton.[4] Although Bradford's argument that it would be legally impossible for him to comply with the trial court's order is contradictory to his own testimony,[5] it does appear the Family Court exceeded its jurisdictional authority when it ordered Bradford to provide Cramer and C.B. with housing at No. 85 Miss Bea Road.

■ ■ In the Virgin Islands, the Family Court has subject matter jurisdiction over the marital homestead and the personal property of the couple, but not over any other real property. *See* 16 V.I.C. § 109(a)(4); 33 V.I.C. § 2305(d); *Dyndul v. Dyndul*, 541 F.2d 132, 133-35, 13 V.I. 376

---

[2] If the omission of the frequency of Bradford's alimony payments from the trial court's order genuinely left Bradford confused, he should have sought clarification from the trial court prior to appeal. *See* 16 V.I.C. § 110 ("At any time after a judgment is given the court, upon the motion of either party on notice, may set aside, alter or modify so much of the judgment as may provide alimony . . . ."). There is no indication in the record, however, that Bradford sought, through motion or any other means, to have the trial court's order clarified or reconsidered.

[3] The record indicates that No. 85 Miss. Bea Road was the parties' residence prior to their divorce, and that Cramer and her son C.B. are currently residing at that address.

[4] Because Bradford does not have standing to assert the rights of Barton, we decline to address this argument. *See Hinck v. United States*, 550 U.S. 501, 510 n.3, 127 S.Ct. 2011, 2017 n.3, 167 L.Ed.2d 888 (2007) ("[A] party must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 129, 125 S.Ct. 564, 567, 160 L.Ed.2d 519 (2004))).

[5] At trial Bradford testified that that he had entered into an oral agreement with Barton whereby Cramer and C.B. could continue to reside at No. 85 Miss. Bea Road as long as C.B. resided at the residence, and until C.B. finished high school.

(3d Cir. 1976) (explaining the marital property distribution scheme in the Virgin Islands); *Armstrong v. Armstrong*, 266 F. Supp. 2d 385, 392 (D.V.I. App. Div. 2003). A "marital homestead" has been defined as any real property in which both a husband and wife reside during the marriage and that is owned by one or both of the spouses. *See, e.g., Charles v. Charles*, 788 F.2d 960, 964 n.8 (3d Cir. 1986); *Armstrong*, 266 F. Supp. 2d. at 394. Since it is uncontested that neither of the spouses are the owners of No. 85 Miss Bea Road, it cannot qualify as a marital homestead. Thus, since the Family Court cannot exercise jurisdiction over any real property other than a marital homestead, we must vacate the Family Court's order requiring Bradford to provide Cramer and C.B. with housing at No. 85 Miss Bea Road.[6]

## III. CONCLUSION

First, based on the undisputed testimony of both parties there is sufficient evidentiary support to justify the Family Court's decision to award Cramer $6,000 to help liquidate the parties' credit card debts. Second, because it is unclear from the record how the Family Court determined Bradford's monthly child support obligation, this matter is remanded to the trial court so that it may determine Bradford's child support obligation under the Child Support Guidelines. Third, the trial court's order requiring him to pay alimony of $1,500 is not vague under 16 V.I.C. § 347, which requires support payments to be made monthly. Finally, the Family Court exceeded its authority in ordering Bradford to provide Cramer and C.B. with rent free housing at No. 85 Miss. Bea Road, which is owned by a third party and not subject to the Family Court's jurisdiction.

---

[6] In light of our holding, the Family Court, on remand, may wish to consider whether to adjust Bradford's monthly alimony payments to reflect the costs associated with Cramer obtaining suitable housing for herself and C.B. *See* 16 V.I.C. § 109(a); *Fuentes v. Fuentes*, 41 V.I. 86, 101 (Super. Ct. 1999) (holding Family Court has broad discretion in determining alimony and should consider factors including the parties' living expenses).