**NJERI TUTEIN, Appellant/Plaintiff**
**v.**
**JUAN F. ARTEAGA, Appellee/Defendant**

S. Ct. Civil No. 2013-0050
Supreme Court of the Virgin Islands
April 7, 2014

711

BEVERLY A. EDNEY, ESQ., St. Croix, USVI, *Attorney for Appellant.*

JUAN F. ARTEAGA, Brooklyn, NY, *Pro se.*

HODGE, *Chief Justice*; Cabret, *Associate Justice*; and Swan, *Associate Justice*.

## OPINION OF THE COURT

(April 7, 2014)

CABRET, *Associate Justice*. Njeri Tutein appeals the Superior Court's order granting sole physical custody of her son A.A. to his father, Juan Arteaga. We affirm because the Superior Court appropriately considered A.A.'s best interests in awarding custody to Arteaga.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Tutein and Arteaga are the unmarried biological parents of A.A. and his older brother A.M.A. In July 2011, Tutein took A.A. with her on a trip to St. Croix with the stated intention of returning to New York three weeks later. However, after arriving on St. Croix, Tutein registered A.A. in school and did not return to New York. In April 2012, Arteaga obtained a court order requiring A.A.'s return to New York, and subsequently travelled to St. Croix to retrieve A.A.

In response, Tutein went to New York and filed for custody of both A.A. and A.M.A. While Tutein eventually agreed to give Arteaga "full physical custody" of A.M.A., she refused to give up custody of A.A. The New York court dismissed Tutein's petition, however, ruling that it lacked jurisdiction to determine A.A.'s custody because A.A. had been residing in St. Croix for at least six months prior to Tutein's petition. Tutein then returned to St. Croix and petitioned the Superior Court for

712

custody of A.A., which ordered A.A.'s immediate return to St. Croix to remain in Tutein's custody pending a custody hearing.

Between January and February 2013, the Superior Court ordered home studies for both Arteaga's home in New York and Tutein's St. Croix home. The Superior Court also appointed Pamela Colon, Esq., as guardian *ad litem* for A.A., ordering her "to preserve, protect, and defend [A.A.'s] interests." *Tutein v. Arteaga*, Super. Ct. CS. No. 027/2012 (STX), slip op. at 1 (V.I. Super. Ct. Jan. 9, 2013). Specifically, the Superior Court ordered Colon to conduct an investigation, submit a written report of her findings, and make a recommendation on the disposition of A.A.'s custody. According to the Superior Court, it was necessary to appoint Colon because "Arteaga's responsive pleading raised an allegation of an inappropriate sleeping arrangement involving A.A. while in the custody of [Tutein]."[1] Colon then conducted a full investigation of the facts surrounding A.A.'s case and submitted a written report to the Superior Court before the custody hearing recommending that the Superior Court award custody to Arteaga.

At the custody hearing on May 14 and 15, 2013, the Superior Court heard testimony from A.A.'s school teacher on St. Croix, A.A.'s half-sisters I.S., I.D., and A.F. (and her boyfriend R.B.), as well as testimony from Tutein and Arteaga. In addition to the testimony of these witnesses, the Superior Court provided both parties with a copy of Colon's report, and allowed the parties to cross-examine Colon about her role in the proceedings and the contents of her report. During closing arguments, Tutein unsuccessfully moved to strike Colon's report on the grounds that it was inappropriate for the court to assign a guardian *ad litem* in a child custody case and that Colon's role in the proceeding was impermissible. The Superior Court never ruled on Tutein's motion to strike Colon's report, and the hearing concluded on May 15, 2013. On June 12, 2013, the Superior Court determined that "it [was] in the best interest of . . . A.A." to be with his father and awarded Arteaga sole custody. After a June 26, 2013 clarification order, Tutein filed a timely notice of appeal with this Court on July 15, 2013.

---

[1] At A.A.'s custody hearing, Arteaga testified that in February 2012, A.M.A. told Arteaga that Tutein's "boyfriend . . . was coming over to the [St. Croix] house and sleeping in the bed with [Tutein] and A.A." Tutein did not deny the allegation, but explained that her boyfriend fell asleep on the bed with A.A. and Tutein only once, while helping Tutein study in her bedroom with A.A. present.

## II. JURISDICTION

We have jurisdiction over this appeal pursuant to V.I. CODE ANN. tit 4, § 32(a), which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court." An order granting custody of a minor to one parent is a final appealable order over which we may exercise jurisdiction. *Madir v. Daniel*, 53 V.I. 623, 630 (V.I. 2010).

## III. DISCUSSION

Tutein argues the Superior Court erred when it appointed a guardian *ad litem* in this custody dispute to investigate facts, issue a report, and make a recommendation regarding the custody of A.A., and insists that her right to procedural due process was violated by the *ex parte* submission of the guardian *ad litem*'s report to the Superior Court. Tutein also asserts that the Superior Court abused its discretion by failing to consider A.A.'s best interests when awarding custody.

### A. The Superior Court's Authority to Appoint a Guardian *Ad Litem*

██ ██ Tutein contends that the Superior Court erred by invoking 16 V.I.C. § 142(a) to appoint Colon as A.A.'s guardian *ad litem*, arguing that the statute applies only in adoption proceedings. While we agree that section 142(a) does not provide for the appointment of a guardian *ad litem* in a custody dispute, this error was harmless because the Superior Court has the inherent authority — even in the absence of a statute — to appoint a guardian *ad litem* in a custody proceeding. We review the Superior Court's conclusions of law, including its interpretation of a statute, *de novo*. *V.I. Narcotics Strike Force v. Pub. Emp. Relations Bd.*, 60 V.I. 206, 212-213 (V.I. 2013). "The first step [in] interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning." *Kelley v. Gov't of the V.I.*, 59 V.I. 742, 745 (V.I. 2013).

██ Section 142(a) provides that the Superior Court may, in certain circumstances, "appoint a suitable person to act . . . as guardian *ad litem* of the child" in adoption proceedings.[2] Given the fact that section 142(a)

---

[2] Section 142(a) of title 16 reads in full:

The parents of the child, or the survivor of them, shall, except as otherwise provided in this chapter, consent in writing to such adoption. If neither parent is living, the guardian

appears in chapter 5 of title 16 — governing adoptions — and specifically applies only to adoption proceedings, we agree with Tutein that the Superior Court erred in invoking section 142(a) to appoint Colon as guardian *ad litem* in this custody dispute. *See Kelley*, 59 V.I. at 745 ("If the statutory language is unambiguous and the statutory scheme is coherent and consistent, no further inquiry is needed."). However, this Court will not reverse if the Superior Court's error was harmless. V.I.S.Ct.R. 4(i). While the Virgin Islands Code authorizes the Superior Court to appoint a guardian *ad litem* for a minor in a variety of instances, no provision specifically authorizes the court to appoint a guardian *ad litem* in a custody proceeding. *See, e.g.*, 15 V.I.C. §§ 821, 827 (addressing the appointment of a guardian *ad litem* in estate proceedings); 28 V.I.C. § 495 (governing the appointment of a guardian for minor shareholders in real property partition actions); 5 V.I.C. § 2505 (authorizing the Superior Court to appoint counsel as guardian *ad litem* for minors in abuse and neglect cases to act as an attorney for the child). Accordingly, we must determine whether, in the absence of an authorizing statute, the Superior Court had the common law authority to appoint a guardian *ad litem* in a custody proceeding.[3]

---

of the child, or, if there is no guardian, the next of kin in the Virgin Islands may give such consent, or, if there is no next of kin, the judge of the court may appoint a suitable person to act in the proceedings as guardian *ad litem* of the child, and to give or withhold such consent.

[3] We recognize that 5 V.I.C. §§ 2505(c) and 2542 may be implicated in this case because the Superior Court appointed Colon in response to Arteaga's allegation that Tutein's sleeping arrangements were inappropriate. Section 2505(c) provides that "[a] child who is the subject of an abuse or neglect complaint or petition shall be provided counsel, to act in the role of guardian *ad litem* pursuant to section 2542." In turn, section 2542 enumerates specific duties for a guardian *ad litem* appointed under section 2505(c). But neither statute applies here, as they apply only in cases involving "an abuse or neglect *complaint or petition*." 5 V.I.C. § 2505(c) (emphasis added). In construing this phrase, we adhere to the Legislature's guidance that "[t]echnical words and phrases [that] . . . have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to their peculiar and appropriate meaning." 1 V.I.C. § 42. From both the plain language and the context of section 2505, as well as other provisions of chapter 201 of title 5, it is clear that the words "complaint" and "petition" are terms of art meaning the initiating documents of a civil action. *See* 5 V.I.C. § 2548(a) ("abuse and neglect proceedings shall be instituted with the filing of a written petition or complaint giving with particularity all factual and other allegations relied upon asserting that a child is abused or neglected."); *see also* BLACK'S LAW DICTIONARY 323 (9th ed. 2009) (defining "complaint" as "[t]he initial pleading that starts a civil action" and observing that "[i]n some states, this pleading is called a petition"); *Id.* at 1261 (defining "pe-

■ This Court possesses the inherent and statutory authority to shape the common law of the Territory. *Banks v. Int'l Rental & Leasing Corp.,* 55 V.I. 967, 974-80 (V.I. 2011). In determining an appropriate common law rule, we consider three non-dispositive factors: "(1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands." *Simon v. Joseph,* 59 V.I. 611, 623 (V.I. 2013) (citing *Matthew v. Herman,* 56 V.I. 674, 680-81 (V.I. 2012)).

Because there do not appear to be any previous cases in the Virgin Islands addressing this issue, we begin by considering how other jurisdictions address this issue at common law. Traditionally, the common law doctrine of *parens patriae*[4] permitted family courts to act in the interest of a child whenever a legal proceeding implicated the child's welfare. *See Verrocchio v. Verrocchio,* 16 Va. App. 314, 429 S.E.2d 482, 485 (1993). In such proceedings, family courts "exercise[d] and control[led]" the common law power of *parens patriae,* which is "separate and distinct from [a] purely statutory power" to protect the minor's interest. *Id.* This power, in the absence of an authorizing statute, included "the long established practice of appointing a guardian *ad litem* [for] a child" in a custody proceeding. *Id.* When courts exercise their discretionary authority under the doctrine of *parens patriae* to appoint a guardian *ad litem* in a custody proceeding, the majority of jurisdictions to have considered the issue permit a guardian *ad litem* to serve "as an agent

tition" as "[a] formal written request presented to a court"). Here, Arteaga's responsive pleading did not constitute either a complaint or a petition and therefore did not transform A.A.'s custody proceeding into one of "abuse or neglect" within the meaning of 5 V.I.C. § 2505(c). Accordingly, 5 V.I.C. §§ 2505(c) and 2542 did not govern Colon's appointment or, consequently, her role as A.A.'s guardian *ad litem.*

[4] At common law, the Latin phrase *"parens patriae"* — literally meaning "parent of [the] country" — referred to the "state [or sovereign] in its capacity as provider of protection [for] those unable to care for themselves." BLACK'S LAW DICTIONARY 938 (9th ed. 2009). The doctrine of *parens patriae* originates from the notion that the king had ultimate ownership of the land and "solicitude for infants, 'idiots,' and 'lunatics.' " Raven C. Lidman & Betsy R. Hollingsworth, *The Guardian* Ad Litem *in Child Custody Cases: The Contours of Our Judicial System Stretched Beyond Recognition,* 6 GEO. MASON L. REV. 255, 291 (1998). Over time, the parens patriae power was transferred to family courts having historic chancery or equity jurisdiction in legal proceedings to protect minors and to consider their best interests in suits at common law. *See Verrocchio v. Verrocchio,* 16 Va. App. 314, 429 S.E.2d 482, 485 (1993).

or arm of the court . . . [who] essentially functions as the court's investigative agent." *Clark v. Alexander*, 953 P.2d 145, 153 (Wyo. 1998) (summarizing the "traditional role" of a guardian *ad litem* in custody proceedings).[5] This role "predate[s] the enactment of . . . statutes," and includes the duty to investigate facts surrounding a case, report findings to the court, and make a recommendation on the disposition of custody. *McDonald v. McDonald*, 39 So. 3d 868, 883 (Miss. 2010) (finding a state statute requiring a guardian *ad litem* to "investigate [and] make recommendations to the court . . . consistent with the traditional roles . . . of a [guardian *ad litem*]"). The appointment of a guardian *ad litem* in a custody proceeding to function as an arm or agent of the court is also consistent with jurisdictions that specifically define the role of a guardian *ad litem* for certain types of proceedings, but lack a specific statutory definition for a court-appointed guardian *ad litem* in a custody dispute. *See, e.g., Patel v. Patel*, 347 S.C. 281, 555 S.E.2d 386, 389-90 (S.C. 2001) (absent a statutory directive, the role of the guardian *ad litem* in a custody dispute is to "conduct an . . . investigation [of] the facts relevant to the

---

[5] *See also Seaton v. Tohill*, 53 P. 170, 172 (Colo. App. 1898) (conceiving of a guardian *ad litem* as an "agent of the court, through whom [the court] acts to protect the interests of the minor"); *Croghan v. Livingston*, 17 N.Y. 218 (N.Y. 1858) (at common law "the guardian ad litem was but the agent of the court to attend to [the minor child's] interests during litigation"); *James v. James*, 64 So. 2d 534, 536 (Fla. 1953) ("When a guardian is appointed . . . he is regarded as the agent of the court . . . ."); *Kenney v. Hickey*, 486 A.2d 1079, 1081-82 (R.I. 1985) (approving of the use of a guardian *ad litem* in a custody proceeding to gather information, prepare a report, and make a recommendation to the court); *Kennedy v. State*, 1999 ME 85, 730 A.2d 1252, 1255 (1999) ("in custody cases, the guardian *ad litem* has traditionally been viewed as functioning as an agent or arm of the court, to which it owes its principal duty of allegiance" (internal quotation marks and citations omitted)); *In re Mark W.*, 228 Ill. 2d 365, 888 N.E.2d 15, 20 (2008) ("The traditional role of the guardian *ad litem* is . . . to make a recommendation to the court as to what is in the ward's best interests." (internal quotation marks and citations omitted)); *Betz v. Betz*, 254 Neb. 341, 575 N.W.2d 406, 409 (1998) ("The guardian ad litem's duties are to investigate the facts and learn where the welfare of his or her ward lies and to report these facts to the appointing court."); *In re Billy W.*, 387 Md. 405, 875 A.2d 734, 752, n.20 (2005) (discussing the "traditional role" for guardians *ad litem* in custody cases as the duty to determine the child's best interests, make a recommendation to the court on that basis, and testify at the custody hearing); *Kahre v. Kahre*, 1995 OK 133, 916 P.2d 1355, 1362 (1995) (the duty of a guardian *ad litem* in a custody dispute "has almost universally been seen as owing . . . to the court that appointed him, [and] not strictly . . . to the child"); *Hughes v. Long*, 242 F.3d 121, 127 (3d Cir. 2001) ("A guardian ad litem is a person appointed by the court in custody proceedings to serve as an investigator and gather information . . . and report back to the court recommending which parent should receive custody.").

717

situation of the child[,] . . . mak[e] . . . recommendations . . . and provide accurate, current information directly to the court[,] . . . and . . . present to the court . . . clear and comprehensive written reports . . . regarding the child's best interest"). Accordingly, it is clear that a majority of jurisdictions having addressed the issue agree that a court may appoint a guardian *ad litem* in a custody proceeding to perform the functions of investigating, reporting, and making recommendations to the court on the disposition of custody.

■ Most importantly, we conclude that recognizing the common law authority of the Superior Court to appoint a guardian *ad litem* in a custody dispute — even in the absence of statutory authority — is the sounder rule. As we noted in *Madir*, "it is clear that the Legislature intends for Virgin Islands courts . . . to resolve custody disputes according to the best interests of the child." *Madir*, 53 V.I. at 632. Failing to recognize the Superior Court's authority to appoint a guardian *ad litem* in a custody dispute when the court concludes that the welfare of the child is in jeopardy would not serve the best interests of the child, and would therefore not be a sounder rule. In contrast, recognizing a court's authority to appoint a guardian *ad litem* in a custody case ensures that the court will be able to make its decision based on complete, objective information that otherwise may have been unavailable to the court. Moreover, a guardian *ad litem* can serve as a buffer against the potentially biased interests of the parents and ensure that the child's best interests receive the appropriate attention. Such a role is particularly helpful to a court when the parents have demonstrated a pattern of adversarial behavior or when there are concerns about whether all relevant information will be brought to the court's attention. While at least one commentator has raised concerns regarding the use of guardians *ad litem* to perform investigatory functions in custody disputes[6] — citing potential issues of fact suppression, bias, and value imposition — such concerns are outweighed by the benefits to minors who are often unable to protect themselves in the absence of a guardian who can assert their interests in court.

■ In light of these considerations, we hold that the Superior Court, independent of statutory authority and pursuant to its *parens patriae*

---

[6] *See* Robert J. Levy, *Custody Investigations in Divorce-Custody Litigation*, 12 J. L. & FAM. STUD. 431, 442-51 (2010).

power, can appoint a guardian *ad litem* to (1) investigate the facts surrounding a custody dispute, (2) report those facts to the Superior Court, (3) testify at the hearing before the court, and (4) make a recommendation to the court on the disposition of custody whenever the welfare of the child is at issue. To avoid ambiguity, when appointing a guardian *ad litem* in a child custody proceeding, the appointing court should clearly specify the terms of the appointment, including the guardian's role, duties, and scope of authority.

██ In this instance, the Superior Court did just that. After Arteaga "raised an allegation of an inappropriate sleeping arrangement involving A.A. while in the custody of [Tutein]," the Superior Court, presumably believing A.A.'s welfare to be at risk, appointed Colon to act as guardian *ad litem*. This appointment was within the Superior Court's discretion to protect A.A.'s welfare, and the court properly noted the functions that Colon was to perform,[7] expressly informing the parties that she would not assume the role of counsel for A.A., even though Colon is a licensed attorney in the Virgin Islands. In this capacity, Colon did not deviate from the role fashioned by the Superior Court and her report reflects that she remained true to her role as an arm and functionary of the Family Division in this proceeding. Accordingly, the scope of Colon's participation as guardian *ad litem* was entirely proper and the Superior Court did not err in appointing Colon to investigate the facts of the case, issue a report, and make a recommendation on the disposition of custody.

██ ██ Tutein also argues that Colon's *ex parte* submission of evidence and her *ex parte* recommendation to the court denied Tutein procedural due process. We disagree. The Superior Court violates a

---

[7] Specifically, the Superior Court requested that Colon conduct an investigation, submit a written report containing her findings, and make a recommendation to the court regarding custody. As Tutein points out, these functions are prohibited under the American Bar Association's ("ABA") standards of practice for lawyers representing children in custody cases. *See* AMERICAN BAR ASS'N, STD'S OF PRACTICE FOR LAWYERS REPRESENTING CHILDREN IN CUSTODY CASES 3 (2003) (prohibiting a lawyer representing a minor from "testify[ing], fil[ing] a report, or mak[ing] recommendations"). However, the prohibitions outlined in the ABA standards of practice are inapplicable here because this Court has not adopted the ABA standards. And while we hold today that the Superior Court properly appointed Colon as a guardian *ad litem* to investigate the facts of the case, issue a report, and make a recommendation, we decline to determine — because it is not before this Court — whether a court can appoint a guardian *ad litem* in a custody proceeding to perform functions other than those assigned in this case — such as acting as counsel for the minor.

party's procedural due process rights in a custody case by relying on a report submitted to the court *ex parte* where the preparer of the report is not present for cross-examination at the hearing. *Dennie v. Swanston*, 51 V.I. 163, 172 (V.I. 2009); *accord Jacobsen v. Thomas*, 323 Mont. 183, 100 P.3d 106, 111 (2004) ("[A] guardian *ad litem* must testify and be subject to cross examination if they give evidence concerning an investigation."); *see also Kelley v. Kelley*, 2007 OK 100, 175 P.3d 400, 403 n.8 (Okla. 2007) ("[D]ue process requires that guardians *ad litem* must be available for cross-examination by parents where their recommendations will weigh in the trial court's custody determination."). In this case, the Superior Court provided a copy of the guardian *ad litem*'s report to both parties prior to the custody hearing and afforded each party the opportunity to cross-examine Colon on her observations. Moreover, in awarding custody to Arteaga, the Superior Court explicitly stated that it "base[d] its custody decision on the evidence of record . . . rather than the Guardian *Ad Litem*'s report and testimony." Accordingly, because both parties had the opportunity to cross-examine Colon regarding her recommendation and because the Superior Court did not exclusively rely on Colon's report in awarding custody to Arteaga, Tutein was not deprived of her procedural due process rights.

## B. The Superior Court's Custody Award

 Lastly, Tutein asserts that the Superior Court abused its discretion in awarding custody of A.A. to Arteaga because its decision was "arbitrary" and "made without . . . adequate consideration of the circumstances."[8] Because the Superior Court properly considered A.A.'s best interests in awarding custody to Arteaga, we disagree. On appeal, Tutein essentially asks this Court to reweigh the evidence, something an

---

[8] Tutein also argues that the Superior Court should have applied the common law "primary caretaker doctrine" in deciding A.A.'s custody. The "primary caretaker doctrine" gives rise to the "tender years presumption" that custody of a young child be awarded to the child's primary caretaker — a presumption that has historically been applied exclusively in the mother's favor. *See generally Ex parte Devine*, 398 So. 2d 686, 688-95 (Ala. 1981) (examining the development of the primary caretaker doctrine); *see also Hodge v. Hodge*, 13 V.I. 561, 570 (D.V.I. 1977) ("this Court has serious doubts as to the viability of the tender years presumption"). Despite this, we need not decide here whether the primary caretaker doctrine applies in the Virgin Islands, as Tutein waived this argument by failing to raise it before the Superior Court. V.I.S.Ct.R. 4(h).

appellate court will not do. *Allen v. People*, 59 V.I. 631 (V.I. 2013). Instead, we review the Superior Court's award of child custody only for an abuse of discretion. *Madir*, 53 V.I. at 634. In applying this standard, we review the Superior Court's legal holdings *de novo* and its findings of fact for clear error. *Id.* at 630. Under clear error review, we defer to the Superior Court "unless [its] determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *Bradford v. Cramer*, 54 V.I. 669, 673 (V.I. 2011) (quoting *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007)).

 In making its custody determination here, the Superior Court relied on this Court's holding in *Madir*. In *Madir*, we concluded that the "best interests of the child should be the paramount concern" of the Superior Court in awarding custody. *Madir*, 53 V.I. at 632. We further declined to specifically define which factors the Superior Court must consider in determining the best interests of a child, but "encourage[d] judges to take account of all relevant considerations" in making their determination. *Id.* at 634. Nonetheless, despite declining in *Madir* to mandate a specific set of factors to govern every child custody award, our case law makes clear that when considering a custody dispute the Superior Court must (1) outline a set of relevant factors that it will use to determine the best interests of the child, *id.*, and (2) explain how its findings of fact regarding those factors are supported by the evidence introduced at the hearing. *Jung v. Ruiz*, 59 V.I. 1050 (V.I. 2013) (indicating that the Superior Court's factual findings must be adequately supported by the record); *cf. In re Q.G.*, 60 V.I. 656, 662 (V.I. 2014) ("meaningful review [for abuse of discretion] is not possible where the trial court fails to sufficiently explain its reasoning").

 In this case, the Superior Court aptly enumerated the factors it considered to be relevant to A.A.'s best interests and expressly took those factors into account in considering the evidence and awarding custody to Arteaga. In particular, the Superior Court considered the following: (1) the parties' respective home environments; (2) the ability of each parent to nurture the child; (3) whether either parent was guilty of abuse; (4) the interrelationship of the child to the parents, siblings, and family members; and (5) the willingness of each parent to provide a stable home environment for the child. These factors mirror the factors this Court approved of in *Madir*, but we note that "we are [in no] position as

721

an appellate court to mandate that all such factors, or even additional factors, must be considered in every case." *Madir*, 53 V.I. at 634. Rather, this Court evaluates a Superior Court's custody award to determine whether the court based its decision on relevant factors related to the best interests of the child. Because the Superior Court articulated factors that were clearly relevant and related to the best interests of A.A., we find that the court properly exercised its discretion.

To the extent that Tutein argues that the Superior Court's findings of fact were clearly erroneous, we are not persuaded. The Superior Court's factual findings were not "completely devoid of minimum evidentiary support" and did not lack a "rational relationship to the supportive evidentiary data." *Bradford*, 54 V.I. at 673 (internal quotations marks omitted). To the contrary, the Superior Court's factual findings were strongly tethered to the evidence introduced at the hearing. While the court determined that neither Tutein nor Arteaga were guilty of abuse and found both parents on equal footing with respect to the factors of home environment and ability to nurture, the court found that Arteaga was more able than Tutein to provide a stable home environment for A.A. On this factor, the court determined that while Arteaga "has consistently lived in New York" and is "currently employed," Tutein remains unemployed and "has never been responsible for her own household." The court's finding that Arteaga was more capable than Tutein to provide a stable home environment for A.A. is supported by the record, which shows that Arteaga is the employed parent who has a demonstrated history of participation and presence in A.A.'s life, and has attended to most of A.A.'s medical, dietary, academic, and recreational needs. On the factor of the interrelationship of the child to parents and other siblings, the court found that A.A.'s bond with A.M.A. took "precedence over his bond with his maternal sisters." The record strongly supports the court's finding that A.A. and A.M.A should not be separated. At the custody hearing, Arteaga testified that A.A. looks up to A.M.A. as a role model. Furthermore, when Colon asked A.A. "where would you rather live, with your mother or your father?" A.A. responded that he "really miss[ed] his brother and want[ed] to live with [him]." Colon testified that A.A.'s statement deeply affected her, and that her investigation revealed that the brothers share a "deep affection for each other and desire to be together." Tutein herself conceded that "it would be wonderful for [the boys] to be together," and that A.A.'s separation from A.M.A. has caused A.A. much

difficulty. We therefore find no merit to Tutein's argument that the Superior Court did not consider A.A.'s best interests, as the record clearly demonstrates otherwise.

## IV. CONCLUSION

Although the Superior Court erred in invoking an adoption statute to appoint Colon as a guardian *ad litem* in this custody proceeding, the error was harmless because — even in the absence of statutory authority — the Superior Court has the common law authority to appoint a guardian *ad litem* in a custody dispute. In addition, because both parties had the opportunity to cross-examine Colon at the custody hearing regarding her report, Tutein was not denied procedural due process. Lastly, the Superior Court did not abuse its discretion in awarding custody of A.A. to Arteaga because the court properly considered A.A.'s best interests. Therefore, we affirm the Superior Court's June 12, 2013 Order.