**SYMONE JAMES, Appellant/Respondent**
**v.**
**SAMUEL FAUST, Appellee/Petitioner**

S. Ct. Civil No. 2014-0038

Supreme Court of the Virgin Islands

February 24, 2015

CLIVE C. RIVERS, ESQ., St. Thomas, USVI, *Attorney for Appellant.*

JULIE GERMAN EVERT, ESQ., Law Office of Julie German Evert, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(February 24, 2015)

CABRET, *Associate Justice.* The mother of a minor child appeals from an order of the Superior Court resolving a custody dispute between her and the child's father. The mother argues that the Superior Court failed to follow the procedure set out by this Court in custody disputes and failed to properly consider the best interests of the child in setting the terms of custody and visitation in its order. Because she is correct, we vacate the Superior Court's custody order and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In March 2012, the father, a resident of Florida, petitioned the Superior Court of the Virgin Islands to grant him visitation rights with respect to his son. The child, born in March 2009, lived at that time with his mother and his maternal aunt and grandparents on St. John. The father then amended his petition to seek joint physical custody with respect to the child, and again amended to seek sole physical custody after two failed mediation efforts.

Along with this second amendment, the father moved for the Superior Court to appoint a guardian *ad litem* to conduct a home study and make a custody recommendation. Without ruling on this motion, the Superior Court held a hearing on physical custody on February 20, 2014, where the court heard testimony from both the mother and father. The father testified that he worked for a utility company in Florida, where he lived, and that

he and the child's mother were together from 2007 to 2009, until they split up shortly after their child was born.

When asked why it would be in the child's best interests for him to have sole physical custody, the father testified that he has a stable job and could be a positive male role model for his son. And while he stated that he thinks the mother is a good parent, he thought that his son was not getting enough attention while living with his mother, particularly from a male role model. He also testified that the costs of frequently traveling between Florida and St. John were difficult to manage, that the frequent travel was putting his job in jeopardy, and that having custody only on school holidays made this worse because traveling to St. John to pick up his son and bring him back to Florida was time consuming and expensive. When asked what custody arrangement he would prefer short of sole custody, the father testified that he at least wanted custody of his son every school holiday, including Thanksgiving and Christmas, with the travel costs shared by the mother.

The mother then testified that she lives with her parents and sister on St. John and works at a pizzeria. The mother had spent a year at nursing school in Puerto Rico, leaving her son with her parents on St. John. She testified that she was thinking of moving with her son to Georgia to live with family there in order to find a job in either nursing or cooking but didn't have the money to move yet. She stated that she thought the father was a good parent and agreed that he should have the opportunity to spend time with their son. She was not opposed to the father having custody during the summer, and even though she would prefer to have custody during alternating Thanksgiving and Christmas holidays, she was willing to give this up if necessary. The mother also testified that she would like the child to stay with her on St. John because she did not want his life to be disrupted.

The next day, the Superior Court held an in-camera hearing with the child in the presence of the parents' counsel.[1] The Superior Court later granted the father's motion to amend his petition to seek sole custody and appointed Darren John-Baptiste, Esq., as guardian *ad litem* on March 13, 2014. The guardian *ad litem* conducted home studies of the mother's and

---

[1] This Court deemed the transcript of the in-camera hearing confidential and ruled that it be sealed in a September 24, 2014 order.

father's residences and filed a report summarizing his findings on May 13, 2014.

In a June 14, 2014 order, the Superior Court found that the mother "has had primary physical custody of the minor child for the past five (5) years and [the father] is entitled to the same opportunity," and that it is "in the best interest of the minor child to spend as much time as possible with both parents." The Superior Court then "awarded joint legal custody," ordering that until July 15, 2015, the mother would have sole physical custody, with the father having "liberal parenting time (visitation)." The court also ordered that the father "shall have parenting time with the minor child during the [child's] 2014 summer vacation and 2014 winter vacation." And from July 15, 2015, to August 30, 2018, the Superior Court ordered that the father have sole physical custody with the mother having "liberal parenting time." The Superior Court also ordered that the mother "shall have parenting time with the minor child during the 2015 winter vacation; 2016 summer vacation; and 2016 winter vacation," and "shall equally share parenting time with the minor child during the summer vacations beginning in 2017." The mother filed a timely notice of appeal with this Court on July 11, 2014. *See* V.I.S.CT.R. 5(a)(1).

## II. JURISDICTION

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court." 4 V.I.C. § 32(a). The Superior Court's June 14, 2014 order deciding the custody rights of the parents was a final order within the meaning of section 32(a), and therefore we have jurisdiction over this appeal. *Tutein v. Arteaga*, 60 V.I. 709, 714 (V.I. 2014) (citing *Madir v. Daniel*, 53 V.I. 623, 630 (V.I. 2010)).

## III. DISCUSSION

■ The mother argues that the Superior Court erred by failing to follow the procedure outlined by this Court for determining the best interests of a child in a custody proceeding. We agree. This Court explained almost two months before the Superior Court issued its order in this case that "our case law makes clear that when considering a custody dispute the Superior Court must (1) outline a set of relevant factors that it will use to determine the best interests of the child, and (2) explain how its findings of fact regarding those factors are supported by the evidence introduced

at the hearing." *Tutein*, 60 V.I. at 721 (citing *Madir*, 53 V.I. at 634 and *Jung v. Ruiz*, 59 V.I. 1050, 1059-65 (V.I. 2013)) (citation omitted). This procedure is necessary because while "we review the Superior Court's custody determination for an abuse of discretion," *Madir*, 53 V.I. at 630, "meaningful review [for an abuse of discretion] is not possible where the trial court fails to sufficiently explain its reasoning." *In re Q.G.*, 60 V.I. 654, 660 (V.I. 2014) (quoting *Rieara v. People*, 57 V.I. 659, 668 (V.I. 2012)); *see also Benjamin v. People*, 59 V.I. 572, 579 n.5 (V.I. 2013); *Wessinger v. Wessinger*, 56 V.I. 481, 488 (V.I. 2012); *Dennie v. Swanston*, 51 V.I. 163, 168 n.1 (V.I. 2009).

■ As the mother points out, the Superior Court followed neither step of the *Tutein* procedure in its June 14, 2014 order. The father insists that "the Superior Court based its decision on the testimony, questions, the [guardian *ad litem*'s] report, and other relevant factors," but none of this is demonstrated in the custody order. While the Superior Court stated that it is in the best interests of the child to spend as much time as possible with both parents — a finding that appears undisputed by the parties and well supported in the hearing transcript — that was the only mention of the child's best interests. The court failed to outline any other relevant factors and failed to explain how the custody arrangement promoted the child's best interests. This lack of explanation makes it impossible for this Court to meaningfully review the Superior Court's determination — under abuse of discretion or any other standard. *Tutein*, 60 V.I. at 721 (citing *In re Q.G.*, 60 V.I. at 660).

The only reason given for the arrangement directed by the Superior Court was its statement that the mother "has had primary physical custody of the minor child for the past five (5) years and [the father] is entitled to the same opportunity." The mother argues that if the Superior Court had properly considered the best interests of the child, the finding that the mother "has had primary physical custody of the minor child for the past five (5) years" should have weighed in favor of the mother's continued physical custody, instead of weighing in the father's favor. This, the mother asserts, demonstrates that the Superior Court failed to take into account the effect relocating to Florida for the majority of the next three years would have on the stability of the child's life.

■ Even though "the Legislature has not defined which factors a court should or must consider in determining the best interests of a child," and this Court has yet to provide a comprehensive set of factors that must be

considered in every custody proceeding,[2] the Superior Court lacks the "unbridled discretion to decide which factors should be considered in child custody proceedings." *Madir*, 53 V.I. at 633-34 & n.7. Instead, the Superior Court must only consider factors that are relevant to the best interests of the *child*, and the consideration in this case of what the father is "entitled" to with regard to the child fails this basic tenet of *Madir*. *Id.* at 634. Just as the Superior Court lacks the discretion to consider factors that are not relevant to the best interests of the child in awarding custody, there can be no doubt that it similarly "lack[s] the discretion to subrogate the child's interests with those of the parents." *Jung*, 59 V.I. at 1068 (Cabret, J., dissenting) (citing *Madir*, 53 V.I. at 634).

 Further, we agree with the mother that the finding that she "has had primary physical custody of the minor child for the past five (5) years" — in other words, the child's entire life — should have weighed in favor of the mother's continued primary custody. We do not mean to say that a child's primary caretaker must always be awarded primary custody, or that this factor must be given the same weight in every custody proceeding. As in *Tutein*, we again decline to endorse the "primary caretaker doctrine" to the extent it serves as a legal presumption operating in favor of one parent over another. *Tutein*, 60 V.I. at 720 n.8; *cf. Rhodes v. Rhodes*, 192 W. Va. 14, 449 S.E.2d 75, 77-78 (1994) ("[T]he law presumes that it is in the best interests of . . . children to be placed in the custody of their primary caretaker."). Instead, we agree with those authorities that have held that while the fact that one parent acts as the child's primary caregiver is a relevant and important consideration in a custody determination, it is not determinative, and is only one factor

---

[2] In *Madir*, this Court explained that at the time that case was decided "we [were] not in a position . . . to mandate [the factors] that . . . must be considered in every case," instead leaving "the task of defining criteria for determining the best interests [of the child] . . . to the Legislature." 53 V.I. at 634 & n.7. But in the nearly five years since *Madir* was decided, the Legislature has provided no further guidance to the Superior Court on what to consider as part of the best-interests analysis in custody proceedings. *Accord Fuerstenberg v. Fuerstenberg*, 1999 SD 35, 591 N.W.2d 798, 807-10 (1999) (outlining several factors to govern a trial court's best-interests custody determination in the absence of specific factors mandated by statute); *Stout v. Stout*, 1997 ND 61, 560 N.W.2d 903, 912 (1997) (adopting factors trial courts must use in determining the child's best interests in a specific subset of custody cases after concluding that the best-interest standard "must be given more specific and instructive content in order to provide our trial courts with adequate guidance and to provide more uniform dispute resolution").

among many that must inform a best-interests determination. *See, e.g., In re Paternity of JWH*, 2011 WY 66, 252 P.3d 942, 947 (2011);[3] *accord Madir*, 53 V.I. at 632 (identifying six relevant considerations in a best-interests custody determination, including "the interrelationship of the child to the parents and other individuals . . . present in the home"); *Jung*, 59 V.I. at 1061 (" 'the potential disruptive effects of the relocation itself and its potential benefits' " must be weighed in a best-interests custody determination (quoting PRINCIPLES OF THE LAW OF FAMILY DISSOLUTION § 2.17 cmt. e)).

Given the facts of this case, where all indications in the hearing transcript, the guardian *ad litem*'s report, and the findings in the Superior Court's order demonstrate that both the mother and father are fit parents, weighing the finding that the mother has served as the child's primary caretaker for his entire life as a factor favoring the *father* in this custody dispute unquestionably constitutes "an improper application of law to fact." *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 748 (V.I. 2014) (defining abuse-of-discretion review) (quoting *Billu v. People*, 57 V.I. 455, 461-62 (V.I. 2012)).[4] Therefore, in addition to the Superior Court's failure to follow the two step *Tutein* procedure, *see* 60 V.I. at 721, it abused its discretion by weighing the one finding it did make — regarding the mother's role as the primary custodian throughout the child's life — in favor of the father.

■ The mother also points to another problematic aspect of the Superior Court's order: the custody arrangement created for the child is ambiguous with regard to the child's custody after August 30, 2018. Since the order would require that the child spend the 2018 winter vacation with his father, it appears that the Superior Court might have intended for the

---

[3] *See also* LINDA ELROD, CHILD CUSTODY PRAC. & PROC. § 4:8 (2014) ("Being the primary caretaker . . . does not assure a custody award if there are factors supporting the other parent's arguments for custody.") (collecting cases); *Pikula v. Pikula*, 374 N.W.2d 705, 711 (Minn. 1985) ("there is little disagreement within the profession of child psychology" about the "importance of emotional and psychological stability to the child's sense of security, happiness, and adaptation") (collecting authorities); *Applegate v. Applegate*, 236 Neb. 418, 461 N.W.2d 419, 420 (1990) ("[W]e reject adoption of the primary caretaker rule as a per se rule. This factor is simply one of several considerations.").

[4] *Cf. In re Custody of Zia*, 50 Mass. App. Ct. 237, 736 N.E.2d 449, 454-55 (2000) (affirming an award of primary custody to the father despite the mother's status as primary caretaker where other factors weighed by the trial court demonstrated that granting the father custody was in the child's best interests).

child to resume living with his mother at the start of the school year in September 2018, but the order never actually states that. *See In re Marriage of Brown*, 310 S.W.3d 754, 758 (Mo. Ct. App. 2010) (remanding for the trial court to clarify its order where it contained language "consistent with joint legal custody and other language consistent with sole legal custody").

■ If the Superior Court sought to leave the custody arrangement undetermined after August 2018, perhaps because the mother testified that she wanted to move to Georgia in the future, this does not lessen the need for a custody arrangement that defines the rights of the mother and father until the child turns 18 in March 2027. *See* 16 V.I.C. § 116(2) ("Child" for the purposes of the Uniform Child-Custody Jurisdiction and Enforcement Act "means an individual who has not attained 18 years of age"); 16 V.I.C. § 261 ("All persons are deemed to have arrived at majority at the age of 18 years."). Otherwise, the parties may be forced to return to court to obtain another custody order even if the mother never leaves St. John. *See In re Reynolds*, 60 V.I. 330, 336-37 (V.I. 2013) (stressing the importance of promoting judicial economy in Superior Court proceedings to avoid needless litigation). If either parent's circumstances change to the extent that any custody arrangement set out by the Superior Court in these proceedings is unworkable, the parties can then seek a modification of the custody arrangement. *See Jung*, 59 V.I. at 1066-67 (Cabret, J., dissenting) ("[A] finding of substantial change in circumstances is required before the court can modify a custody arrangement.").

And if the Superior Court did intend for the custody arrangement to end after August 2018, it is not clear that the Superior Court would even retain jurisdiction over the child's custody at that time. Normally, the Uniform Child-Custody Jurisdiction and Enforcement Act — which both the Virgin Islands and Florida have adopted, *see* 16 V.I.C. §§ 115-140o; FLA. STAT. ANN. §§ 61.501-61.542 — would maintain the Superior Court's exclusive jurisdiction over the child's custody, *see* 16 V.I.C. § 128, and prevent a Florida court from modifying the Superior Court's custody order. *See* FLA. STAT. ANN. § 61.516. But if the custody arrangement was intended to end after August 2018, it is unclear whether the Superior Court would retain jurisdiction to decide any future custody arrangement under the uniform act. *See, e.g., Billhime v. Billhime*, 2008 PA Super 121, 952 A.2d 1174, 1177 (2008) (questioning whether a

Pennsylvania trial court retained jurisdiction to modify a custody order under the uniform act after the mother moved the children to Florida).

■ The Superior Court's order is ambiguous in another critical respect as well, using the term "parenting time" several times in an inconsistent manner. In some portions of the order, "parenting time" appears to refer to visitation rights while the child is in the physical custody of the other parent, but in other portions of the order, "parenting time" appears to refer to physical custody itself. The custody order must unambiguously set out the custody arrangement and visitation rights of each parent so that it is enforceable in future proceedings, both in the Superior Court and the courts of other uniform act jurisdictions. *In re Custody of N.A.W.*, 61 V.I. 145, 149 (V.I. 2014) (a custody order may only be enforced through contempt proceedings when "the order . . . is clear and unambiguous" (quoting *In re Burke*, 50 V.I. 346, 352 (V.I. 2008))); *see also Niskar v. Niskar*, 136 S.W.3d 749, 755 (Tex. App. 2004) ("the trial court abused its discretion by failing to order the appellant's possession of and access to the child in clear and unambiguous terms" because "the appellant could not successfully enforce this judgment by contempt"); *Yates v. Yates*, 2008 PA Super 296, 963 A.2d 535, 545 (2008) (remanding a custody order where "the trial court's incorporation of . . . unidentified terms . . . create[d] unnecessary uncertainty").

■ ■ Because the Superior Court did not follow this Court's precedent on the required procedure for determining a child's best interests in a custody proceeding, and further did not set out a permanent and enforceable custody arrangement, we vacate and remand for the Superior Court to set out an unambiguous custody arrangement between the mother and father until the child turns 18 after following the two-step *Tutein* procedure.[5]

---

[5] Although not expressly raised, this Court's decision in *Tutein* also reaffirmed that "[t]he Superior Court violates a party's procedural due process rights in a custody case by relying on a report submitted to the court *ex parte* where the preparer of the report is not present for cross-examination at the hearing." *Tutein*, 60 V.I. at 719-20 (citing *Dennie*, 51 V.I. at 172). In this case, the Superior Court didn't appoint a guardian *ad litem* until after the February 2014 hearing, and never held another hearing, denying the mother and father the opportunity to question the guardian *ad litem* under oath or otherwise address the findings of his report. Unless the parties waive the right to examine the guardian *ad litem*, the Superior Court must comply with *Tutein* by affording them this opportunity on remand. The lack of any examination of the guardian *ad litem* is made all the more problematic by the fact that the mother

## IV. CONCLUSION

Although this Court reviews the Superior Court's custody determination for an abuse of discretion, such review is impossible where the Superior Court fails to explain its reasoning. Here, the Superior Court failed to comply with the two-step *Tutein* procedure for custody determinations, requiring the court to "(1) outline a set of relevant factors that it will use to determine the best interests of the child, and (2) explain how its findings of fact regarding those factors are supported by the evidence introduced at the hearing." 60 V.I. at 721. The order also failed to set out a permanent and unambiguous scheme governing custody until the child's eighteenth birthday. Therefore, we vacate the Superior Court's June 14, 2014 custody order and remand for the court to set out a permanent custody arrangement after following the *Tutein* procedure and affording the parties an opportunity to examine the guardian *ad litem* under oath in accordance with their procedural due process rights.

---

states in her appellate brief that the guardian *ad litem* made a recommendation that the mother retain custody, and the Superior Court's custody order suggests that the guardian *ad litem* did in fact make a recommendation. But the Superior Court never stated what this recommendation was, the guardian *ad litem*'s report does not include a recommendation, and there is nothing in the record reflecting what this custody recommendation was, if there actually was one. While the guardian *ad litem*'s recommendation — like the consideration of which parent is the primary caregiver — is not determinative or binding on the Superior Court, it must be given appropriate consideration as part of the two-step *Tutein* procedure.